2008 ME 76

**STATE of Maine**

v.

**Brandon B. DREWRY.**

Supreme Judicial Court of Maine.

Argued: Jan. 15, 2008.

Decided: May 1, 2008.

Sarah A. Churchill, Esq., Clifford B. Strike, Esq., Strike, Goodwin & O'Brien, Portland, ME, Andrews Campbell, Esq. (orally), Campbell Law Offices, Bowdoinham, ME, for Brandon Drewry.

Stephanie Anderson, District Attorney, Julia Sheridan, Asst. Dist. Atty. (orally), Portland, ME, for the State of Maine.

Panel: SAUFLEY, C.J., and CLIFFORD, ALEXANDER, LEVY, SILVER, MEAD, and GORMAN, JJ.

Majority: SAUFLEY, C.J., and CLIFFORD, ALEXANDER, LEVY, MEAD, and GORMAN, JJ.

Dissent: SILVER, J.

CLIFFORD, J.

[¶ 1] Brandon B. Drewry appeals from a judgment of conviction of: (1) gross sexual assault (Class A), 17–A M.R.S. § 253(1)(A) (2007); (2) kidnapping (Class A), 17–A M.R.S. § 301(1)(A)(3) (2007); (3) aggravated assault (Class B), 17–A M.R.S. § 208(1)(B) (2007); (4) unlawful sexual contact (Class B), 17–A M.R.S. § 255–A(1)(P) (2007); (5) criminal threatening with a dangerous weapon (Class C), 17–A M.R.S. § 209(1) (2007);[1] and (6) aggravated assault (Class B), 17–A M.R.S. § 208(1)(A) (2007), entered in the Superior Court (Cumberland County, *Delahanty, J.*) following a jury trial. Drewry contends that he was denied his right to a speedy trial, and to represent himself; that the court erred in admitting and excluding certain evidence at trial, and in refusing to suppress evidence obtained in a search of his bags; and that he was improperly ordered to reimburse the court for a portion of his court-appointed attorney fees. Drewry also challenges the sufficiency of the evidence supporting each of his convictions. We affirm the convictions.

## I. BACKGROUND

[¶ 2] Viewing the facts in the light most favorable to the State, as we must, *see State v. Woo*, 2007 ME 151, ¶ 5, 938 A.2d 13, 14, the following evidence was presented at trial. At around midnight on the evening of August 30, 2004, the victim, then twenty-five years old and married with two children, left her home in Portland to find drugs. It was a cool and rainy night. On the street, the victim encountered Drewry, with whom she smoked marijuana. Drewry then dragged her by her hair into a nearby alley, threw her on the ground, held her there with his knees on her shoulders, and choked her several times with both hands. Drewry punched the victim in the face with a closed fist several times until her face went numb and she had trouble seeing out of her left eye. He then moved her against a wall and prevented her from leaving the alley by wrapping his legs around hers.

[¶ 3] Drewry demanded that the victim remove all her clothes, which she did out of fear that he would hurt her. He forced the victim to perform oral sex on him, and

---

1. Pursuant to 17–A M.R.S.A. § 1252(4) (Supp. 2004), the use of a dangerous weapon elevated this offense to a Class C offense. Title 17–A M.R.S.A. § 1252(4) has been amended. P.L. 2005, ch. 527, § 17 (effective Aug. 23, 2006) (codified at 17–A M.R.S. § 1252(4) (2007)).

penetrated her anus several times with his fingers. At some point during the attack, Drewry cut the victim on her legs, hip, and back with a piece of broken glass, drawing blood. He also hit her in the ribs several times, and threatened to cut her nipple off with the glass, to penetrate her anus with a stick, and to snap her neck. Drewry laughed while beating the victim. The victim lost consciousness twice during the attack for unknown durations, and does not remember all of the details of that evening.

[¶ 4] After approximately five hours with Drewry, the victim was able to escape; she ran, still naked, back to her home. When she arrived home, she was met by her husband, who was angry at her for having been gone so long, and with whom she argued as she called 9–1–1. The victim was transported by ambulance to the hospital emergency room, where she was admitted and released a few days later. The victim suffered a fractured eye socket, a vertebral arterial injury that could have led to a stroke, bruises, swelling, contusions, abrasions, and pain and tenderness in several locations including her ribs. The victim's recovery period lasted approximately twelve weeks.

[¶ 5] Drewry had been staying at a shelter that provides services to transient people, and which was located near the scene of the attack. Police officers found Drewry, who matched the victim's description of her assailant, a few hours after the attack at the shelter. In a photo lineup, the victim also identified Drewry as her attacker. Police found items of clothing in Drewry's possession matching the victim's description of her own clothing and Drewry's clothing during the attack, which were wet and soiled with dirt and leaves, consistent with the conditions in the alley that night. Police also found hairs that were matched to the victim on clothing found in Drewry's possession.

[¶ 6] By indictment dated October 7, 2004, the State charged Drewry with six criminal counts: (1) gross sexual assault (Class A), 17–A M.R.S. § 253(1)(A); (2) kidnapping (Class A), 17–A M.R.S. § 301(1)(A)(3); (3) aggravated assault (Class B), 17–A M.R.S. § 208(1)(B); (4) unlawful sexual contact (Class B), 17–A M.R.S. § 255–A(1)(P); (5) criminal threatening with a dangerous weapon (Class C), 17–A M.R.S. §§ 209(1); and (6) aggravated assault (Class B), 17–A M.R.S. § 208(1)(A). Drewry pleaded not guilty to all six counts.

[¶ 7] Drewry moved to suppress several pieces of evidence, including, inter alia, the evidence obtained in a search of his bags that occurred in September of 2004. The court (Cole, J.) conducted a suppression hearing on August 31, 2005, and took all motions under advisement. The court then conducted a supplemental suppression hearing in April of 2006 to allow Drewry to present additional evidence regarding the search of his bags. Following the hearing, the court ruled on each of the pending motions, and denied Drewry's motion with respect to the search and seizure of his bags.

[¶ 8] Prior to trial, the court also considered several motions in limine. Drewry moved to exclude all physical evidence in the matter due to an inadequate chain of custody, and the State sought exclusion of the results of a DNA test on semen samples taken from the victim's vagina. The court denied Drewry's motion to exclude all physical evidence, and granted in part the State's request to exclude portions of the DNA evidence.

[¶ 9] On December 7, 2006, four days prior to the commencement of his trial, Drewry moved to dismiss the indictment against him on the ground that he had

been denied his right to a speedy trial. Following a hearing, the court (*Delahanty, J.*) denied the motion. Drewry also requested permission to partially represent himself during his trial; he stated that he wished to make an opening statement, but wanted his attorneys to represent him during the remainder of his trial.

[¶ 10] Drewry's jury trial commenced in December of 2006. On the morning of the first day of the trial, Drewry informed the court that his counsel would be giving his opening statement, and Drewry's attorney did deliver the opening statement. After opening statements were completed and the first witness had given her testimony, however, Drewry requested the right to "reopen [the case] and make a new opening statement" and to represent himself completely. The court denied the request on the ground that presentation of the evidence had already begun.

[¶ 11] The jury returned a verdict of guilty as to all six counts. The court entered a judgment on the verdict, and sentenced Drewry to thirty years incarceration for gross sexual assault and kidnapping, to run concurrently; ten years for unlawful sexual contact and the two counts of aggravated assault, to run concurrent with the thirty-year sentence; and five years for criminal threatening with a dangerous weapon, to run concurrent with the other sentences. The court ordered Drewry to pay restitution in the amount of $495 for the victim's losses, and also ordered him to pay $2500 toward the fees and expenses of court-appointed counsel from the more than $4200 Drewry had in his jail account. Drewry appealed.

## II. DISCUSSION

### A. Speedy Trial

■ [¶ 12] Drewry first contends that he was denied his right to a speedy trial, as guaranteed by both the Maine and United States Constitutions, in that he spent twenty-seven months incarcerated while awaiting his trial.[2] As the United States Supreme Court has noted, "[w]e cannot definitely say how long is too long in a system where justice is supposed to be swift but deliberate." *Barker v. Wingo*, 407 U.S. 514, 521, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). A speedy trial analysis requires application of "a delicate balancing test that takes into account all of the circumstances of the case at hand." *State v. Murphy*, 496 A.2d 623, 627 (Me. 1985). We review speedy trial issues according to the four-factor test set forth by the United States Supreme Court: "the length of the delay, the reasons for the delay, the defendant's assertion of his right, and prejudice to the defendant arising out of the delay." *Id.*; *see Barker*, 407 U.S. at 530, 92 S.Ct. 2182. We have held that this analysis need only be undertaken when the delay is presumptively prejudicial. *Murphy*, 496 A.2d at 627. If the Court determines that a defendant's speedy trial right has been violated, the proper remedy is dismissal of the indictment. *Barker*, 407 U.S. at 522, 92 S.Ct. 2182.

■ [¶ 13] In this case there were several reasons for the delay in Drewry's trial. First, as to the length of the delay, although the period of twenty-six months during which Drewry awaited trial is lengthy enough to generate a presumption of prejudice, it is not long enough to justify

2. The United States Constitution provides, "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial...." U.S. Const. amend. VI. Likewise, the Maine Constitution provides that "[i]n all criminal prosecutions, the accused shall have a right to ... have a speedy, public and impartial trial." Me. Const. art I, § 6.

a per se finding that Drewry was denied a speedy trial. *See Murphy*, 496 A.2d at 627.

[¶ 14] Second, a review of the record reveals that the delay in Drewry's trial was the result of a combination of actions of Drewry, the State, and the court. There was no deliberate attempt to hamper Drewry's defense, however. *See Barker*, 407 U.S. at 531, 92 S.Ct. 2182. Much of the delay can be attributed to the necessity of having three court-appointed attorneys represent Drewry.[3] Further, the abundance of motions filed, including many motions to suppress, motions in limine, and motions for funds filed by Drewry himself—many of which necessitated a hearing—required additional court time. In addition, an infectious disease quarantine at the jail also required a continuance.

[¶ 15] Third, although Drewry initially expressed to the court frustration with the delay in his trial on August 31, 2005, exactly one year after his arrest, he did not move to dismiss the indictment against him on speedy trial grounds until December 7, 2006, just four days prior to the commencement of his trial. Drewry "has no obligation to bring himself to trial," but "his failure to assert his right to a speedy trial at any time prior to his motion to dismiss makes it less credible that the delay was undue or that [Drewry] suffered any prejudice therefrom." *See Murphy*, 496 A.2d at 628; *see also Barker*, 407 U.S. at 527, 92 S.Ct. 2182.

[¶ 16] Finally, Drewry did not establish that he was prejudiced by the delay in bringing his case to trial. Accordingly, we do not disturb the trial court's decision that Drewry did not suffer a speedy trial violation.

## B. Self-representation

[¶ 17] Drewry also contends that he was denied the right to represent himself at trial. The United States Constitution guarantees that all criminal defendants are entitled "to have the Assistance of Counsel for [their] defence." U.S. CONST. amend. VI. Similarly, the Maine Constitution provides that "[i]n all criminal prosecutions, the accused shall have a right to be heard by the accused and counsel to the accused, or either, at the election of the accused." ME. CONST. art. I, § 6. Nevertheless, "[c]onstitutional rights, including the right to counsel, may be waived as long as the waiver is voluntary, knowing, and intelligent." *State v. Watson*, 2006 ME 80, ¶ 15, 900 A.2d 702, 708. In evaluating whether a proper waiver of the right of a defendant to represent himself occurred, the court must consider "whether the defendant was informed of the right to counsel by the court, as well as the totality of relevant circumstances including the background, experience, and conduct of the accused." *Id.* ¶ 17, 900 A.2d at 709 (quotation marks omitted). Before waiving that right, the defendant must be informed by the court of "the hazards ahead and the . . . pitfalls of proceeding to trial without counsel." *Id.* ¶ 18, 900 A.2d at 709 (quotation marks omitted).

[¶ 18] We discern no error in the trial court's finding that Drewry effectively

---

3. During the course of his prosecution, Drewry was represented by multiple court-appointed attorneys. While his motions to suppress were pending, in January of 2006, Drewry's first court-appointed attorney moved to withdraw from the case, citing a breakdown in the attorney-client relationship based on Drewry's filing of a bar complaint against the attorney. Drewry's second court-appointed attorney withdrew from Drewry's case in September of 2006, citing a conflict of interest. The court then appointed a third attorney to represent Drewry, who represented him during the trial. A fourth attorney represents Drewry on this appeal.

waived his right to represent himself. Several days prior to the commencement of his trial, Drewry indicated to the court only that he wished to make his own opening statement. During the next few days leading up to trial, the court informed Drewry multiple times that he did indeed have the right to represent himself during his trial, but also properly warned Drewry that statements made in his opening could negatively affect the course of his defense. On the morning of trial, Drewry waived his right of self-representation when he unequivocally informed the court that his attorney would be delivering the opening statement. Based on the procedural posture of the case at the time, the court also properly denied Drewry's subsequent motion to make a second opening statement, which Drewry requested after the first witness testified and was excused. Drewry was not denied his right of self-representation.

C. Motion to Suppress

[¶ 19] Drewry next contends that the court improperly denied his motion to suppress the evidence obtained from what he asserts was an illegal search of his bags that occurred in September of 2004.[4] *See* U.S. Const. amend. IV; Me. Const. art. I, § 5. We review a suppression court's findings of fact for clear error, and its legal conclusions de novo. *State v. Bilynsky*, 2007 ME 107, ¶ 16, 932 A.2d 1169, 1173. We "uphold the court's denial of a motion to suppress if any reasonable view of the evidence supports the trial court's decision." *State v. Alley*, 2004 ME 10, ¶ 13, 841 A.2d 803, 807 (quotation marks omitted).

[¶ 20] Evidence obtained in violation of a defendant's right to be free from unreasonable searches and seizures must be excluded at trial. *State v. Thibodeau*, 2000 ME 52, ¶ 6, 747 A.2d 596, 598. Generally, searches and seizures require a warrant. *State v. Michael M.*, 2001 ME 92, ¶ 6, 772 A.2d 1179, 1181; *see also* M.R.Crim. P. 41; *Katz v. United States*, 389 U.S. 347, 357, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). Nevertheless, a warrantless search is permitted when (1) "it is supported by probable cause" as well as "exigent circumstances ... requiring a prompt search, without the delay occasioned by the need for a warrant," or (2) "the search is pursuant to another recognized exception to the warrant requirement." *State v. Rabon*, 2007 ME 113, ¶ 11, 930 A.2d 268, 274 (quotation marks omitted).

[¶ 21] Based on competent evidence presented during two testimonial hearings, the court concluded that the police decision to seize Drewry's bags prior to obtaining a warrant to do so was justified by exigent circumstances. Very recently, we clarified the exigent circumstances justification for warrantless searches and seizures to apply "when there is a compelling need to conduct a [seizure] and insufficient time in which to secure a warrant." *Id.* ¶ 14, 930 A.2d at 275. "[P]robable cause is a prerequisite for the exigent circumstances justification to apply." *Id.*

[¶ 22] Drewry does not dispute that the officers had probable cause to arrest him, and the court specifically found that, having already arrested Drewry based on probable cause, officers also had probable cause to seize his belongings based on the

---

4. The Fourth Amendment to the United States Constitution provides: "The right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures, shall not be violated...." U.S. Const. amend. IV. Similarly, the Maine Constitution provides, "The people shall be secure in their persons, houses, papers and possessions from all unreasonable searches and seizures." Me. Const. art. I, § 5.

same grounds. Contrary to Drewry's contention, exigent circumstances existed, namely, the location of Drewry's bags in a large, unlocked office at the transient shelter used primarily by several staff members but that could have been accessible at any moment by a number of people, staff and non-staff alike.

[¶ 23] We agree with the suppression court that those exigent circumstances, in combination with probable cause to believe Drewry had committed a crime, justified the officers' seizure of Drewry's bags in the absence of a warrant. Although the bags were *seized* prior to the issuance of a warrant based on exigent circumstances, the record amply supports the suppression court's finding that Drewry's bags were not *searched* until after the police obtained a warrant. Thus, the court committed no error in denying Drewry's motion to suppress evidence obtained from the search and seizure of his bags.

D. Admission of Evidence

[¶ 24] DNA tests ordered by the State revealed the presence of semen in the victim's vaginal cavity, indicating that she had engaged in vaginal intercourse near the time of her attack. The State moved in limine to exclude that evidence on the ground that because the State alleged only digital penetration of the anus, the presence of vaginal semen was not relevant. The court did allow the jury to hear that semen was found in the victim's vagina, and that the semen did not belong to Drewry. Drewry argues that the court erred in keeping from the jury that the semen also did not belong to the victim's husband. The court excluded that evidence because it would impermissibly disclose to the jury the victim's sexual history in violation of M.R. Evid. 412. We review a court's decision to admit or exclude evidence for clear error or an abuse of discretion. *State v. Mills,* 2006 ME 134, ¶ 8, 910 A.2d 1053, 1056.

[¶ 25] "The past sexual behavior of a victim is generally not admissible under M.R. Evid. 412." *State v. Jacques,* 558 A.2d 706, 707 (Me.1989). Rule 412 provides, in pertinent part:

(a) In a civil or criminal case in which a person is accused of sexual misconduct toward an individual, reputation or opinion evidence of past sexual behavior of the alleged victim of such misconduct is not admissible.

(b) In a criminal case in which a person is accused of sexual misconduct toward a victim the only evidence of the alleged victim's past sexual behavior that may be admitted is the following:

(1) Evidence, other than reputation or opinion evidence, of sexual behavior with persons other than the accused, offered by the accused upon the issue of whether the accused was or was not, with respect to the alleged victim, the source of semen or injury; or

(2) Evidence, other than reputation or opinion evidence, of sexual behavior with the accused offered by the accused on the issue of whether the alleged victim consented to the sexual behavior with respect to which the accused is charged.

(3) Evidence the exclusion of which would violate the constitutional rights of the defendant.

M.R. Evid. 412(a), (b). Thus, Rule 412 prohibits the admission of evidence of the victim's prior sexual history, except to establish consent by the victim, that the defendant is not the source of the semen or injury to the victim, or to protect a particular constitutional right of the defendant.

[¶ 26] The rationale underlying Rule 412 is to prevent a "trial of the victim, rather than of the accused." *State*

*v. Robinson,* 2002 ME 136, ¶ 12, 803 A.2d 452, 457 (quotation marks omitted). Nevertheless, pursuant to the defendant's right to present a proper defense and to cross-examine witnesses, there are circumstances in which a victim's past sexual behavior may be admissible, including: "to expose a possible motive to lie," "to rebut the presumption of a victim's sexual naivete," "when the prosecution has 'opened the door' by offering evidence of the victim's chastity," or "when a statement by the victim about past sexual conduct is relevant for impeachment." *Id.* ¶ 13, 803 A.2d at 457 (quotation marks omitted).

▮ [¶ 27] Drewry argues that the admission of only part of the results of the DNA evidence regarding the semen found in the victim's vagina was improper for two reasons. First, he contends, the DNA evidence was probative of the defense theory that because the victim could not recall the source of the semen, her recollection of all of the events of that evening was so poor as to be incredible. Drewry did, however, elicit testimony from the victim to the effect that she was a crack addict, and that there were portions of the evening that she could not remember and during which she was unconscious, effectively challenging the victim's reliability as to her recollection of the events of that evening.

[¶ 28] Second, Drewry contends, the existence of the semen, which belonged neither to him nor to the victim's husband, and which the victim could not explain, is probative of his defense theory of an alternative assailant. The jury was aware that semen was found in the victim's vagina, and that it did not belong to Drewry. The jury was also presented with evidence that the victim did not have a good relationship with her husband, from which the jury could also infer that the semen did not

belong to him, but rather to some third person. Specifically, the jury was informed that the victim's husband did not accompany her to the hospital following the attack, that the victim and her husband argued during her 9–1–1 call, that he was angry with her after the attack for having been gone so long, and that the victim was a drug addict who was under the influence of drugs on the night of the attack and who could not recall portions of that evening. Accordingly, the court did not act beyond its discretion in excluding the DNA evidence that the semen did not belong to the victim's husband.

▮ [¶ 29] We are also not persuaded by Drewry's other argument—that the court exceeded its discretion in excluding other physical evidence collected at the crime scene. Contrary to Drewry's contention, we are satisfied that, to the extent there was any break in the chain of custody in the collection of that evidence, that break was minor. "[A] minor break in the chain of custody may affect the weight that is assigned to evidence but does not affect its admissibility." *State v. Lobozzo,* 1998 ME 228, ¶ 10, 719 A.2d 108, 110.

E.   Reimbursement of Counsel Fees

[¶ 30] Drewry further contends that the court erred in ordering him to reimburse the court for counsel fees incurred by Drewry's court-appointed attorneys. The court ordered Drewry to reimburse it in the amount of $2500 toward fees paid to Drewry's court-appointed counsel after finding that Drewry had $4265.42 in his jail account, which funds were obtained as a result of a settlement of Drewry's claim in the United States District Court against the Cumberland County Jail and Jail personnel for injuries he sustained from having been assaulted by another inmate

while awaiting his trial.[5]

[¶ 31] The trial court has the authority to reconsider a defendant's indigency status at any time during the course of criminal proceedings "whenever convincing evidence of non-indigence comes to [the court's] attention." *State v. Perry*, 486 A.2d 154, 158–59 (Me.1985); *see also* M.R.Crim. P. 44. Drewry's alleged injuries, although sustained while in jail on the present indictment, were not the result of any misconduct on the part the State, the police, the court, or any witnesses. We decline to extend Drewry's invitation to expand our holding in *Perry* to these circumstances, and determine that the court committed no error in ordering Drewry to reimburse the State for a portion of his court-appointed legal fees.

F. Sufficiency of the Evidence

[¶ 32] Finally, Drewry challenges the sufficiency of the evidence supporting each of his convictions. We view the evidence "in the light most favorable to the State to determine whether a fact-finder could rationally find beyond a reasonable doubt every element of the offense charged." *Woo*, 2007 ME 151, ¶ 5, 938 A.2d at 14. The fact-finder is permitted to draw "all reasonable inferences from the evidence," and exclusively decides the weight to be given to the evidence and the credibility to be afforded to the witness. *State v. Moores*, 2006 ME 139, ¶ 7, 910 A.2d 373, 375 (quotation marks omitted); *State v. Basu*, 2005 ME 74, ¶ 20, 875 A.2d 686, 692. Further, "[a] victim's testimony, by itself, is sufficient to support a guilty verdict for a sex crime or a violent crime if the testimony addresses each element of the crime and is not inherently incredible." *Moores*, 2006 ME 139, ¶ 9, 910 A.2d at 376.

[¶ 33] Viewing the evidence in the light most favorable to the State, there is sufficient evidence in the record to support a finding, beyond a reasonable doubt, that Drewry committed each element of the crimes of which he was convicted. *See* 17–A M.R.S. §§ 2(9), 208(1)(A), (B), 209(1), 253(1)(A), 255–A(1)(P), 301(1)(A)(3)(2007).

The entry is:

Judgment affirmed.

SILVER, J., dissenting.

[¶ 34] I respectfully dissent from Part II.D of this opinion, in which the majority affirms the trial court's decision to exclude DNA evidence that semen found in the victim's vagina did not belong to the victim's husband. Although I concur in the rest of the opinion, I write also to express my concern over Part II.C, in which the majority affirms the suppression court's decision to deny Drewry's motion to suppress evidence obtained from the search and seizure of his bags.

A. Part II.C

[¶ 35] Officers in this case seized Drewry's bag from the shelter in which he was staying and held it, unopened, in the police evidence lab. Almost exactly two days after the seizure, a warrant to search the bag was applied for and obtained. I agree with the majority that the Superior Court properly denied Drewry's motion to suppress the evidence found in the bag, but this two-day delay concerns me.

[¶ 36] We have held that only a search warrant obtained "a reasonable time after the seizure of the property" is valid. *Adams v. Allen*, 99 Me. 249, 252, 59 A. 62, 63 (1904). It follows that if the warrant is obtained an unreasonable time after the seizure, the warrant is unauthorized and void. *See id.*; *State v. Riley*, 86 Me. 144,

---

**5.** The $2500 is being held in escrow pending Drewry's appeal.

146–47, 29 A. 920, 920 (1893). What is a reasonable time is determined by the officer's use of due diligence and the facts of the case. *Weston v. Carr,* 71 Me. 356, 358 (1880).[6]

[¶ 37] The U.S. Supreme Court has also addressed the standard to determine whether a delay between seizure and obtaining a warrant is reasonable. *United States v. Van Leeuwen,* 397 U.S. 249, 253, 90 S.Ct. 1029, 25 L.Ed.2d 282 (1970). The *Van Leeuwen* court, and at least one federal circuit, have looked to the facts of the case to determine whether a delay was reasonable or not. *See id.; United States v. Hernandez,* 313 F.3d 1206, 1212 (9th Cir.2002). Also important is whether the delay was the result of bad faith on the government's part. *See United States v. Yi,* 1992 U.S.App. Lexis 26387, at * 10 (9th Cir. Oct. 9, 1992).

[¶ 38] Given the record before us, I cannot say that there was either an unreasonable delay or bad faith on the part of the State. The fact that the police waited to open Drewry's bag until they obtained a search warrant is evidence that supports the trial court's decision to deny Drewry's motion to suppress. *See State v. Alley,* 2004 ME 10, ¶ 13, 841 A.2d 803, 807. For this reason, I concur in Part II.C.

[¶ 39] I write to express my concern, and to caution that warrants ought to be sought as expeditiously as possible, both to ensure the rights of individuals and the government's interest in successfully prosecuting crimes.

## B. Part II.D

[¶ 40] The Superior Court clearly erred in excluding from evidence the fact that the semen found in the victim's vagina did not belong to her husband. I am mindful of the purpose of M.R. Evid. 412 to protect the victim against irrelevant and hurtful insinuations of her promiscuity. In this case, however, the excluded evidence would have served a legitimate purpose.

[¶ 41] M.R. Evid. 412 allows the admission of "the alleged victim's past sexual behavior" if offered "by the accused upon the issue of whether the accused was or was not, with respect to the alleged victim, the source of semen or injury." At trial, Drewry defended the charge by claiming that there was an unidentified third party who assaulted the victim. Evidence was presented regarding the existence of this third party, as well as the victim's poor relationship with her husband. From this evidence, the majority contends, the jury could "infer that the semen did not belong to [the victim's husband], but rather to some third person." By excluding this evidence, the court prevented Drewry from turning this inference into a positive, undeniable fact. This is the difference between circumstantial and direct evidence, and is therefore substantial. Its exclusion should not be approved.

[¶ 42] Beyond the bare language of M.R. Evid. 412, we have sources to guide us. First, the February 1, 1983, Advisory Committee Note to Rule 412 provides that "[t]he danger in the admission of ... evidence [of a victim's past sexual behavior] is the likelihood that it will provoke moral and emotional reactions in the trier of fact increasing the risk of unfair prejudice." M.R. Evid. 412 advisory committee's note,

---

**6.** In *Weston,* we also wrote that "when no sufficient reason is given for longer delay, we think it should not exceed twenty-four hours from the time of seizure." *Weston v. Carr,* 71 Me. 356, 358 (1880). Clearly times have changed since 1880; populations have grown as have the burdens on the court system. I do not, therefore, hold to *Weston's* twenty-four hour declaration. My concern in the case before us does, however, arise in part from that holding.

Field & Murray, *Maine Evidence* at 179 (2000 ed. 1999). In this case, evidence was introduced to establish that the victim left home on the evening in question to find drugs and was under the influence of drugs such that she could not remember portions of the evening. Evidence was also presented to create the inference that the semen did not belong to the victim's husband. Given this evidence, confirmation to the jury that the semen indeed was not that of the victim's husband would be highly unlikely to provoke additional moral or emotional reactions.

[¶ 43] The Advisory Committee Note also states that "[t]he word 'past' in Rule 412 refers to occasions prior to trial and other than the occasions involved in the charges, whether prior or subsequent thereto in time." *Id.* at 180. The evidence that was suppressed would point to the victim's sexual behavior during the occasion involved in the charge, because it would point to her behavior on the evening of, and indeed at the same time as, the assault of which Drewry is accused. Rule 412 does not, therefore, govern the admission or exclusion of the evidence in question. This makes sense because Rule 412 was designed to prohibit "evidence of [a] victim's prior sexual activities to show she had the propensity to engage in consensual sex." *State v. Cormier*, 2003 ME 154, ¶ 18, 838 A.2d 356, 360. The evidence Drewry proposed to admit would show not promiscuity, but an alternative assailant.

[¶ 44] In addition to allowing evidence of past sexual behavior of the alleged victim to show that the accused was not the source of semen or injury, Rule 412(b)(3) allows such evidence where "exclusion of [the evidence] would violate the constitutional rights of the defendant." This exception "stem[s] from a defendant's constitutional right to effectively cross-examine and to present a proper defense." *State v.*

*Robinson*, 2002 ME 136, ¶ 13, 803 A.2d 452, 457. We have also said that the defendant must be "afforded a meaningful opportunity to present a complete defense." *State v. Warren*, 1998 ME 136, ¶ 9, 711 A.2d 851, 855. One way to present a complete defense, and a way that is allowed under Rule 412, is to "generate doubt as to [the defendant's] participation in abuse," even where that evidence involves "inquiry into any evidence of other abuse." *See State v. Jacques*, 558 A.2d 706, 708 (Me.1989).

[¶ 45] The majority holds that Drewry was able to generate the inference of an alternative assailant by suggesting that the victim had sexual intercourse with a third party on the night in question, but that Drewry was prohibited from establishing the undeniable fact of a third party by showing in fact that the victim had such sexual intercourse. In so doing, the majority is affirming the trial court's denial of Drewry's constitutional right to present a complete defense. Under Rule 412, this affirmation is an error.

[¶ 46] Evidence that is admissible under Rule 412 must also be admissible under M.R. Evid. 403. Rule 403 operates to exclude relevant evidence

> if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

[¶ 47] The evidence of the presence of a third party's semen is probative of the existence of an alternative assailant. The ability to establish with certainty that third party's existence is thus highly relevant to Drewry's defense. By relieving the jury of its need to infer the existence of a third party, this evidence would establish the third party as fact, thus lessening the likelihood that the jury would be mis-

led. The majority suggests that the evidence that was presented is enough to raise the inference of an alternative assailant, but evidence of a third party's semen is substantially different, because it changes inference to fact, and circumstantial evidence to direct evidence. The introduction of this evidence would therefore not be cumulative.

[¶ 48] The danger of unfair prejudice, which must be balanced against the probative value of the evidence in a Rule 403 analysis, is that the victim would have been cast as promiscuous. If one act of sexual conduct with a person not one's spouse would cast that person as promiscuous, then the Superior Court, in allowing the evidence that the majority recites, successfully cast the victim in this case as promiscuous. Evidence of the semen in question would not have worsened any prejudice the jury might have had against her.

[¶ 49] Even if there is some danger of prejudice in introducing the evidence in question, that danger must substantially outweigh the probative value. M.R. Evid. 403. In this case, Drewry's constitutional right to introduce evidence highly probative of his legitimate defense of an alternative assailant is not substantially outweighed by the low likelihood that the evidence would create unfair prejudice against the victim.

[¶ 50] For the above reasons, I dissent from the majority's holding in Part II.D. The Superior Court's exclusion of the evidence in question was not harmless error because it affected Drewry's constitutional rights and may have affected the jury's verdict. *See State v. Dyer,* 2007 ME 118, ¶ 28, 930 A.2d 1040, 1046; *Shaw v. Packard,* 2005 ME 122, ¶ 13, 886 A.2d 1287, 1290. I would therefore vacate and remand for a new trial.