2010 ME 47

**STATE of Maine**

v.

**Domingos MEDEIROS.**

Supreme Judicial Court of Maine.

Argued: April 14, 2010.

Decided: May 27, 2010.

Gerald F. Petruccelli, Esq. (orally), Bradford A. Pattershall, Esq., Petruccelli, Martin & Haddow, LLP, Portland, ME, for Domingos Medeiros.

James A. Andrews, Asst. Dist. Atty. (orally), Franklin County D.A.'s Office, Farmington, ME, for the State of Maine.

Panel: SAUFLEY, C.J., and ALEXANDER, LEVY, SILVER, MEAD, and GORMAN, JJ.

ALEXANDER, J.

[¶ 1] Domingos Medeiros appeals from a judgment of the Superior Court (Franklin County, *Murphy, J.*) following a jury-waived trial, convicting him of leaving the scene of an accident involving death or

serious bodily injury (Class C), 29–A M.R.S. § 2252(5) (2009).[1] Medeiros argues that there is insufficient evidence in the record to support the court's finding that he: (1) had actual knowledge of his involvement in the accident, and (2) recklessly failed to comply with the requirements of section 2252. We affirm the judgment.

## I.  CASE HISTORY

[¶ 2] Viewing the facts in the light most favorable to the State as the prevailing party, the court rationally could have found the following facts proved beyond a reasonable doubt. See State v. Bruzzese, 2009 ME 61, ¶ 2, 974 A.2d 311, 311–12. Domingos Medeiros is the owner of a Massachusetts business that manufactures and sells roof and floor trusses. As part of his job, Medeiros routinely secures and transports heavy loads of lumber. On January 16, 2008, Medeiros, along with his wife, traveled from their home in Massachusetts to Kingfield to deliver a load of trusses to a customer, Tim Harvey. Medeiros loaded the trusses onto a twenty-eight-foot trailer that he attached to his pick-up truck.[2]

[¶ 3] After Medeiros reached Kingfield and unloaded the trusses, Harvey asked Medeiros, as a favor, to bring some heavy wooden beams back to Massachusetts. Medeiros agreed, and seven beams, weighing a total of 2200 pounds, were loaded onto Medeiros's trailer. The four-by-twelve-inch beams, approximately sixteen to eighteen feet long, were secured to the trailer with straps. In return for bringing the beams to Massachusetts, Harvey offered to buy Medeiros and his wife dinner at a restaurant in Farmington. Harvey left Kingfield, with Medeiros driving behind him.

[¶ 4] En route southbound on Route 27 toward Farmington, at least one of the straps securing the beams was observed to come loose. Thereafter, the entire load of beams fell off Medeiros's trailer and into the road. Several of the beams entered the northbound lane where their momentum carried them south. One beam crashed through the windshield of a vehicle driving northbound, killing the driver instantly. A second beam entered the engine compartment of another northbound vehicle, shattering the windshield and causing injuries to the occupants. A third vehicle received undercarriage damage caused by striking a beam or beams. The court found that at the time the other

1.  Title 29–A M.R.S. § 2252 (2009) provides as follows:

> 1.  **Operator required to stop.** The operator of a vehicle involved in an accident anywhere that results in personal injury or death to a person shall immediately stop the vehicle at the scene of the accident or stop as close as possible and immediately return to the scene.
>
> 2.  **Provide information.** The operator shall remain at the scene and provide to the injured person or the operator or an occupant of the other vehicle:
>
> A.  The operator's name and address;
> B.  The registration number of the operator's vehicle; and
> C.  An opportunity to examine the driver's license if the other operator or occupant so requests and the license is available.
>
> 3.  **Render assistance.** The operator shall render reasonable assistance to an injured person.
>
> 4.  **Violation.** A person commits a Class D crime if that person fails to comply with this section.
>
> 5.  **Aggravated punishment category.** Notwithstanding subsection 4, a person commits a Class C crime if that person intentionally, knowingly or recklessly fails to comply with this section and the accident resulted in serious bodily injury, as defined in title 17–A, section 2, subsection 23, or death.

2.  The truck in question was a heavy-duty pick-up truck with dual rear wheels.

vehicles were struck, neither Medeiros nor his wife were aware that the beams had fallen off of the trailer.

[¶ 5]  Medeiros continued driving four to five miles to the designated restaurant in Farmington.  During that drive, Medeiros encountered several emergency vehicles with lights flashing traveling northbound.  After arriving at the restaurant, Medeiros realized that the beams had fallen from his trailer.  He became extremely upset.  Despite his apparent distress, Medeiros failed to initiate any effort to contact the authorities to alert them to the dangerous situation on the roadway caused by the lost beams.  Instead, he and his wife got back in their vehicle and began to re-trace their drive from Kingfield.  Harvey, who was also at the restaurant when the beams were discovered missing, followed Medeiros in search of the beams.

[¶ 6]  While Medeiros was driving back towards Kingfield, his wife expressed concern, in reference to the emergency vehicles they had seen earlier, that the beams they had carried were the cause of a serious accident.  Medeiros responded that such a conclusion was "absurd."

[¶ 7]  After driving several miles, Medeiros encountered a line of cars that were stopped because of the accident farther up the road.  He parked his truck one-tenth to two-tenths of a mile from the accident scene, and both he and his wife got out and spoke with other bystanders.  One bystander told Medeiros that there had been a three-car accident farther down the road "with a casualty."  Medeiros could not see the accident scene from where his vehicle was parked.  An emergency vehicle was blocking anyone from proceeding closer to the accident.

[¶ 8]  Harvey, who by this time had also arrived at the roadblock, overheard a bystander say there had been "an accident with a logging truck."  After learning that the accident involved lumber, Harvey testified that both he and Medeiros were frightened that the load of beams had caused the accident.  Harvey described Medeiros's demeanor at this point in time as "panicked."  Harvey asked Medeiros what he wanted to do, and Medeiros replied that he "needed a minute to think."

[¶ 9]  Medeiros attempted to pass the emergency vehicle blocking the road to get closer to the accident scene.  A fireman stationed in the roadway told him that he could not proceed, and instructed him to turn his truck around and "move along."  At no point did Medeiros inform the fireman, other rescue personnel, or anyone else at the scene of his identity or that he had lost the heavy beams from his trailer.  Shortly thereafter, Harvey suggested that they leave, and Medeiros drove back to Massachusetts with his wife, without stopping for dinner in Farmington.

[¶ 10]  The next morning, January 17, 2008, Harvey called Medeiros to confirm that the accident scene they had observed had involved the beams in the roadway.  That day, Medeiros contacted an attorney in Massachusetts and called and left a message with the Franklin County Sheriff's Department that he wanted to speak with someone.

[¶ 11]  After some investigation by the Franklin County Sheriff's Department, an arrest warrant was issued for Medeiros on January 18, 2008.  Medeiros turned himself in, after obtaining local counsel, on January 23, 2008.

[¶ 12]  In April 2008, an indictment was issued by the Franklin County Grand Jury charging Medeiros with leaving the scene of an accident that resulted in serious bodily injury or death (Class C) 29–A M.R.S. § 2252(5).

[¶ 13]  Medeiros pleaded not guilty to the charge, waived a jury trial, and had a

two-day trial in February 2009. The court found Medeiros guilty as charged. The court found that because Medeiros: (1) returned to the scene, knowing he had lost a dangerous load of beams; (2) encountered the roadblock and emergency vehicles; and (3) was told by bystanders that a serious accident had occurred involving a casualty, he knew at that time that he was a person involved in an accident, for purposes of 29–A M.R.S. § 2252(1), (5).[3] The court also found that because Medeiros had actual knowledge that he was involved in a serious accident, he recklessly failed to comply with the mandates set forth in section 2252(1)-(3), namely, remaining at the scene, identifying himself to those injured, rendering assistance, and providing information.

[¶ 14] Medeiros was later sentenced to eighteen months imprisonment, with all but ninety days suspended, and two years of probation. This appeal of the conviction followed.

## II. LEGAL ANALYSIS

[¶ 15] Medeiros argues that the evidence in the record is insufficient to support the court's finding that he: (1) knew he was involved in an accident when he discovered that the beams had fallen from his trailer, attempted to re-trace his drive from Kingfield, and encountered the emergency vehicle roadblock; and (2) recklessly failed to comply with the return to the scene and notification of identification obligations of section 2252.

[¶ 16] We review the evidence in the light most favorable to the State, *Bruz-* *zese*, 2009 ME 61, ¶ 2, 974 A.2d at 311–12, recognizing that the fact-finder is permitted to draw all reasonable inferences from the evidence, and decide the weight to be given to the evidence and the credibility to be afforded to the witnesses. *State v. Drewry*, 2008 ME 76, ¶ 32, 946 A.2d 981, 991.

[¶ 17] A criminal conviction may be based solely upon circumstantial evidence so long as the proffered evidence "supports a finding that each element of the crime at issue is proved beyond a reasonable doubt[,]" *State v. Moores*, 2009 ME 102, ¶ 10, 982 A.2d 318, 320, even if the inferences made from circumstantial evidence are contradicted by parts of the direct evidence, *see State v. Woo*, 2007 ME 151, ¶ 5, 938 A.2d 13, 14.

[¶ 18] The purpose of section 2252 and its predecessor hit and run prohibitions is "to facilitate an exchange of information between motorists involved in accidents as merely a first step toward establishing fault." *State v. Beaudoin*, 503 A.2d 1289, 1290 (Me.1986). A conviction pursuant to such a statute "determines nothing more than there was an accident in which [the] defendant was involved and that he left the scene without identifying himself." *Id.*

[¶ 19] Accordingly, section 2252(1) requires the operator of a vehicle "involved in an accident" that results in personal injury to immediately "stop the vehicle at the scene of the accident or stop as close as possible and immediately return to the scene." 29–A M.R.S. § 2252(1).

---

**3.** Medeiros testified that upon learning from the bystander that there had been a "three-car accident," he became "relieved" because he assumed it was a separate accident that had nothing to do with his beams. The court explicitly found that Medeiros's statements, "[w]hether [ ] strategic or whether they repre-sent genuine denial," lacked credibility and contradicted his behavior, "including his quick and immediate return to the scene and his angry reaction to his wife" when she expressed concern that the lost beams had perhaps caused the accident.

[¶ 20] In addition, the statute imposes the affirmative duty to provide information and reasonable assistance to the occupants or operators of the other vehicle or vehicles.[4] 29–A M.R.S. § 2252(2), (3). The operator must give the other party an opportunity to inspect his or her driver's license, if requested, and the operator must provide his or her name, address, and vehicle registration number. 29–A M.R.S. § 2252(2)(A), (B), (C).

[¶ 21] Generally, violation of section 2252 is a Class D crime; however, if the operator "intentionally, knowingly or recklessly fails to comply" with the requirements of section 2252(1)-(4), and the accident caused serious bodily injury, the crime is elevated to a Class C felony. 29–A M.R.S. § 2252(5).

[¶ 22] Although section 2252(1) does not expressly define "involve[ment] in an accident," because the statute imposes an affirmative duty to act, actual knowledge of involvement in an accident is implied within the statute's structure. *See State v. Day*, 1999 ME 29, ¶ 13, 724 A.2d 1245, 1247 (emphasizing that "[s]tatutory language must be construed to avoid absurd, illogical, or inconsistent results" (quotation marks omitted)); *see also State v. Keiser*, 174 Vt. 87, 807 A.2d 378, 384 (2002) (holding that because Vermont's "hit-and-run" statute imposes similar affir-mative duties, actual knowledge of involvement in an accident is required before criminal liability may be imposed).

[¶ 23] Here, Medeiros was involved in a serious personal injury accident at the point the beams separated from his trailer and caused death and injury to persons traveling northbound on the roadway. Further, the record supports the court's finding that, within a very few minutes, Medeiros had actual knowledge that he was a person involved in an accident. First, Medeiros, having secured and transported many heavy loads over the course of overseeing his business, appreciated the danger posed by 2200 pounds of heavy beams falling into the road. This appreciation is apparent from Medeiros's alarmed reaction upon discovering the beams missing at the restaurant, and his immediate attempt to re-trace his drive. Despite this alarm, Medeiros made no effort to alert authorities to the dangerous condition of which he was aware, either at the restaurant or at the roadblock.

[¶ 24] Second, when Medeiros encountered the roadblock, he was informed that a serious accident with "a casualty"[5] had occurred involving "a logging truck." By that time, Medeiros had already witnessed emergency responders driving in the opposite direction. They were heading up the road where he had recently lost over a ton

---

4. In personal injury accidents, it will not always be practical to communicate directly with the occupants of a vehicle involved in the accident; such communication could be impossible, for example, if the other person is unconscious or receiving emergency care. The obligations imposed by section 2252(1)-(3) would be met, in such a situation, by remaining at or returning to the scene and giving the required information to rescue or law enforcement personnel in the vicinity. *See e.g., State v. Dyer*, 289 A.2d 693, 695 (Me.1972).

5. While the evidence in this case indicates that Medeiros learned that the accident involved "a casualty," only intentional, knowing or reckless failure to comply with section 2252 and the fact that the accident involved a serious bodily injury need be proved to support imposition of the aggravated punishment category of section 2252(5). The State is not required to prove that a defendant knew that the accident caused serious bodily injury, as in a case, for example, when a vehicle, after a collision or a close encounter, is forced off the road, and the other vehicle leaves the scene without a defendant operator learning the condition of the other driver.

of wooden beams. In addition, both Medeiros's friend and his wife openly expressed concern that the beams had caused a serious accident.

[¶ 25] Other circumstantial evidence supports the court's finding that Medeiros had knowledge of his involvement in the accident; Medeiros's demeanor at the roadblock was described as panicked. Such a reaction to encountering an emergency roadblock would be unexpected and unusual, absent an individual's belief that he was involved with the accident, and supports the court's inference that Medeiros knew he was involved.

[¶ 26] Coupled with this evidence, the court expressly discredited Medeiros's testimony that he did not know he was involved in a serious accident upon encountering the roadblock. Given the evidence in the record and the deference we must pay to the trial court's assessment of credibility, the evidence is sufficient to support the court's finding that Medeiros was an operator of a vehicle "involved in an accident" for purposes of section 2252(1)-(4).

■ [¶ 27] To affirm application of the aggravated punishment category of section 2252(5), the evidence in the record must also support the court's finding that Medeiros acted recklessly by failing to provide his identity and information about the lost beams to the injured persons or appropriate law enforcement or rescue personnel at the scene of the accident. A person acts recklessly with regard to his or her conduct "when the person consciously disregards a risk that the person's conduct will cause such a result." 17–A M.R.S. § 35(3)(A) (2009). To be reckless, a person's behavior must be a "gross deviation from the standard of conduct that a reasonable and prudent person would observe in the same situation." 17–A M.R.S. § 35(3)(C).

[¶ 28] The evidence fully supports the trial court's finding that by leaving the roadblock and by failing to alert the authorities about the lost beams, Medeiros consciously disregarded the risk that his actions would violate the requirements of section 2252(1)-(4). This conscious disregard is demonstrated by Medeiros taking time to think at the roadblock, believing the beams were still on the road and had caused the accident, before ultimately deciding to leave the area, unidentified.

[¶ 29] Contrary to Medeiros's contention that he was forced to leave by the emergency personnel at the roadblock, nothing prevented Medeiros from informing the emergency workers that he believed he was involved in the accident, and that he had important information about the beams lost on the road. This is precisely the exchange of information envisaged by the statute, and the court did not err in finding that, by failing to provide this information, Medeiros recklessly failed to comply with section 2252(1)-(3).

The entry is:

Judgment affirmed.