STATE OF MAINE
WALDO, ss.

UNIFIED CRIMINAL DOCKET
DKT. NO. WALCD-CR-16-783

STATE OF MAINE,

v.

RICHARD GREY

)
)
)
)
)
)
)
)
)
)

**ORDER ON DEFENDANT'S
MOTION IN LIMINE REQUESTING
ADMISSION OF POLYGRAPH
TESTING AND RESULTS**

Presently before the Court in this matter is Defendant's Motion in Limine Requesting Admission of Polygraph Testing and Results. The Court held a hearing on August 30, 2017, and the parties subsequently submitted briefs in support of their respective arguments. Because the Law Court has taken a clear stance on the admission of polygraph test results and a defendant's willingness, or unwillingness, to take one, the Defendant's Motion is **DENIED**.

## BACKGROUND

The Court held a hearing on Defendant's Motion on August 30, 2017. At the hearing, Defendant called Mark Teceno, a licensed polygraph examiner, to testify as to the polygraph examination Mr. Teceno conducted on the Defendant on April 27, 2017. The State called Terry James, a polygraph examiner for the State Police, to testify about his review of Mr. Teceno's polygraph examination of Defendant. The parties agreed to submit written briefs in support of their respective positions on the admission *vel non* of the results of Mr. Teceno's polygraph examination of Defendant.

## DISCUSSION

Defendant argues the results of polygraph examinations are reliable enough in contemporary times such that Maine courts should abandon long-held concerns over the

1

reliability[1] of polygraph examinations and the effects they have on the factfinder's determination of credibility. However, this Court is not persuaded it should upend decades of established Maine caselaw—including recent reinforcement—holding results of a polygraph examination and a defendant's willingness, or unwillingness, to take one inadmissible.[2] The Law Court has had a number of chances in the relatively recent past to reexamine its original position on excluding polygraph exams and has reiterated its position on the inadmissibility of polygraphs at trial.

As recently as 2010, the Law Court highlighted its "long-standing, fundamental concern regarding polygraph machines due to their non-existent value when it comes to determining credibility, and the dangerous possibility that credibility will be evaluated by the device rather than by the trier of fact." *Lavoie*, 2010 ME 76, ¶ 14, 1 A.3d 408 (citations and quotations omitted). Due to this concern, "polygraph test results and a defendant's willingness, or unwillingness, to take a polygraph test are inadmissible." *Id.* In 2012, in a case where the admissibility—or inadmissibility—of the results of a polygraph examination was not directly at issue, the Law Court arguably went out of its way to re-state in a footnote "that the results of polygraph tests are completely inadmissible because they have non-existent value when it comes to determining credibility." *State v. Nightingale*, 2012 ME 132, ¶ 3 n.1, 58 A.3d 1057 (citations

[1] Defendant argues polygraph examinations are statistically more accurate than other types of evidence allowed into court. However, the purported statistically less-reliable examples Mr. Teceno pointed to during the hearing are all tests used during field sobriety testing. The results of these sorts of tests go to the issue of whether or not an individual was impaired, not the individual's credibility. On the other hand, the results of a polygraph examination go directly to the issue of the credibility of the examinee, who may or may not testify in court. Because "the fact-finder is permitted to . . . decide the weight to be given to the evidence and the credibility to be afforded to the witnesses," *State v. Medeiros*, 2010 ME 47, ¶ 16, 997 A.2d 95, the effect of polygraph examinations making an implicit or explicit determination of the examinee's credibility is a unique concern not present with other types of ostensibly less-reliable forms of evidence. Defendant offers to forego a jury trial if this Court is concerned the jury would be confused by admission of the results of the polygraph exam. However, this Court is not aware of any Law Court case sanctioning the admission of the results of polygraph examinations in bench trials. Thus, the Law Court's blanket prohibition on the admission of the results of polygraph examinations controls.

[2] See, e.g., *State v. Lavoie*, 2010 ME 76, ¶¶ 14-16, 1 A.3d 408, and the cases cited therein for a discussion of the line of precedent.

2

and quotations omitted). Not only is the Law Court convinced the results of polygraph tests have non-existent value for determining credibility, but they could, in fact, have negative value with respect to credibility because "[l]ie detector evidence directly and pervasively impinges upon that function which is so uniquely the prerogative of the jury as fact-finder: to decide the credibility of witnesses." *State v. Williams*, 388 A.2d 500, 502 (Me. 1978).

With respect to the evidence of "reliability" presented during the motion hearing in the pending case, the Court is not persuaded that there has been a sufficient demonstration that reliability of the proffered evidence has been established. There is no question that the two witnesses presented were highly competent, licensed polygraph examiners who were well versed in the utilization and interpretation of such examinations. However, the data regarding the scientific evaluation of the reliability and validation of polygraph testing as a whole remains limited and fairly recent.

Since reiterating its concern with polygraphs generally and the possibility that the jury will use the results of the polygraph exam to make credibility determinations in *Lavoie*, the Law Court has not provided any signal that it is ready to reconsider its position on the inadmissibility the polygraph test results and a defendant's willingness, or unwillingness, to take the test. Until the Law Court holds otherwise, the results of a polygraph examination and a defendant's willingness, or unwillingness, to take one are inadmissible.

3

The entry is:

1. Defendant's Motion in Limine Requesting Admission of Polygraph Testing and Results is **DENIED**.
2. The Clerk is directed to incorporate this Order into the docket by reference pursuant to M.R.U. Crim. P. 53(a).

Dated: 11/7/17

Robert E. Murray
Justice, Maine Superior Court

4