MAINE SUPREME JUDICIAL COURT                                      Reporter of Decisions
Decision:     2015 ME 78
Docket:       Pen-14-112
Argued:       April 7, 2015
Decided:      June 23, 2015

Panel:        SAUFLEY, C.J., and ALEXANDER, MEAD, GORMAN, JABAR, and HJELM, JJ.

STATE OF MAINE

v.

CLARENCE COTE

HJELM, J.

[¶1]  Clarence Cote appeals from a judgment of conviction entered by the trial court (*Anderson, J.*) after a jury found him guilty of two counts of gross sexual assault (Class A), 17-A M.R.S.A. § 253(1)(B), (4) (1983).[1]  Cote contends that his constitutional right to a fair trial was violated by the State's failure to preserve a recording of a police interview of the victim and by the State's delay in seeking an indictment.  We affirm the judgment.

## I.  BACKGROUND

[¶2]  The record, viewed in the light most favorable to the State, establishes the following facts.  *See State v. Marroquin-Aldana*, 2014 ME 47, ¶ 2, 89 A.3d 519.

---

[1]  Title 17-A M.R.S.A. § 253(1)(B) has since been amended, though not in any way that affects this case.  *See* P.L. 2001, c. 383, § 14 (effective Jan. 31, 2003); P.L. 2003, c. 711, § B-2 (effective July 30, 2004).

[¶3]  In August 2012, Cote was indicted by a grand jury for two counts of gross sexual assault based on allegations that he sexually abused his niece in July and August 1990.  Shortly after the abuse occurred, the victim moved from Lincoln to Millinocket and no longer saw Cote.  In 1992, Cote moved out of Maine.  The victim reported the assaults sometime after that, and her allegations were eventually referred to the Millinocket Police Department.  In December 1994, a Millinocket detective conducted a recorded interview of the victim at her middle school.  Based on her statements about where the incidents occurred, the case was transferred to the Lincoln Police Department in early 1995.

[¶4]  In January 1996, the Maine State Police took over the investigation, and a State Police detective interviewed the victim.  The State filed a complaint against Cote, and a warrant was issued for his arrest, but because he was not in Maine, he was not arrested until April 2012.  Following Cote's arrest, a State Police detective attempted to find the recording of the 1994 interview, but although it had been turned over to the Lincoln Police Department, there was no record of what happened to it after that, and it was never found.  The case was then presented to a grand jury, which returned the indictment against Cote.

[¶5]  In April 2013, Cote filed a motion to dismiss the indictment, contending that he was prejudiced by the pre-indictment delay and that the State's failure to preserve the recording violated his right to a fair trial.  After a hearing,

the court (*R. Murray, J.*) denied the motion, finding that the State did not act in bad faith in failing to preserve the recording and that Cote was not prejudiced by the pre-indictment delay.

[¶6]  A two-day trial was held in January 2014.  The victim testified that in 1990, the summer before she entered second grade, she sometimes stayed with Cote and her aunt in Lincoln, and that, on several occasions, Cote subjected her to sexual assaults including anal intercourse and oral-genital contact.  The now-retired Millinocket detective who interviewed the victim testified, based on a report that he wrote at the time of the interview, that the victim told him that the assaults had occurred approximately two years before the interview, which would have been in either 1991 or 1992.  He also testified that the victim stated in the interview that on several occasions Cote touched her vagina and forced her to touch his penis.  The victim could not remember at trial, however, whether she had stated in the interview that Cote forced her to have anal intercourse or to have oral contact with his penis.

[¶7]  During the trial, Cote moved for a judgment of acquittal, arguing that the State's evidence was inconsistent regarding the year in which the assaults occurred.  He also renewed his motion to dismiss based on pre-indictment delay and destruction of evidence.  The court denied both motions, and the jury found Cote guilty of both counts of gross sexual assault.  He was sentenced on the first

count to a ten-year prison term with all but five years suspended and six years of probation, and on the second count to a concurrent five-year prison term. He timely appealed.

## II. DISCUSSION

[¶8] Cote contends that his due process rights were violated by the State's failure to preserve the recording of the December 1994 interview with the victim and the twenty-two-year delay between the alleged assaults and the indictment.

A.     Disappearance of Evidence

[¶9] Cote first argues that the trial court erred by denying his motion to dismiss the indictment based on the missing interview recording. Because the court correctly treated Cote's motion as a motion to suppress,[2] we review the factual findings underlying the trial court's ruling for clear error and the court's legal conclusions de novo. *See State v. Drewry*, 2008 ME 76, ¶ 19, 946 A.2d 981.

[¶10] The court denied Cote's motion solely because he did not prove that the State acted in bad faith in failing to preserve the recording. A showing of bad faith, however, is not always required for a defendant to prove that his right to a

---

[2] Cote originally raised the issue of the missing recording in a motion to dismiss, but the trial court correctly recognized that the proper way to challenge the failure to preserve evidence is through a motion to suppress, *see State v. Bilynsky*, 2007 ME 107, ¶ 40, 932 A.2d 1169, and stated that its order should therefore be construed as a denial of a motion to suppress. *See id.* (treating the trial court's denial of a motion to dismiss for destruction of evidence as a ruling on a motion to suppress). At trial, the court similarly indicated that a motion to dismiss was not a proper vehicle for relief based on the destruction of evidence and suggested that discovery sanctions might be more appropriate. When Cote did not suggest any sanction, the court denied both the motion to dismiss and any motion for sanctions.

fair trial was violated by the State's destruction or loss of evidence. Rather, the United States Supreme Court has held that the question of whether a defendant is required to prove that the State acted in bad faith is a function of the nature of the lost or destroyed evidence. *See California v. Trombetta*, 467 U.S. 479, 488-89 (1984); *Arizona v. Youngblood*, 488 U.S. 51, 58 (1988).

[¶11]   In *Trombetta*, the Court held that, in order to protect a criminal defendant's right to a fair trial, prosecutors have a constitutional duty to preserve material evidence. 467 U.S. at 488. For evidence to be material, it "must both possess an exculpatory value that was apparent before the evidence was destroyed, and be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means." *Id.* at 489. That holding, however, left open an important question: whether a defendant's rights can be violated when the State fails to preserve evidence that was not apparently exculpatory at the time it was lost or destroyed.

[¶12]  The Court answered that question affirmatively in *Youngblood*, but it also held that "unless a criminal defendant can show bad faith on the part of the police, failure to preserve *potentially useful* evidence does not constitute a denial of due process of law." 488 U.S. at 58 (emphasis added). The Court emphasized that "[t]he Due Process Clause of the Fourteenth Amendment, as interpreted in *Brady* [*v. Maryland*, 373 U.S. 83 (1963)], makes the good or bad faith of the State

irrelevant when the State fails to disclose to the defendant material exculpatory evidence." *Youngblood*, 488 U.S. at 57. The Court declined, however, to read the Due Process Clause "as imposing on the police an undifferentiated and absolute duty to retain and to preserve all material that might be of conceivable evidentiary significance in a particular prosecution." *Id.* at 58. Particularly, the Court held that absent a showing of bad faith, the state's failure to "preserve evidentiary material of which no more can be said than that it could have been subjected to tests, the results of which might have exonerated the defendant" was not a violation of the defendant's due process rights. *Id.* at 57.

[¶13] The Supreme Court therefore has drawn a distinction between apparently exculpatory evidence and potentially useful evidence, and that distinction determines whether a defendant must prove that the loss of evidence was the result of bad faith on the part of the state. *Youngblood* makes clear that a defendant is required to prove that the state acted in bad faith only if the evidence does not "possess an exculpatory value that was apparent before the evidence was destroyed." *Trombetta*, 467 U.S. at 489; *see Youngblood,* 488 U.S. at 57-58; *see also United States v. Garza*, 435 F.3d 73, 75 (1st Cir. 2006).

[¶14] We have not always drawn that distinction with precision. For example, in *State v. Cyr*, 588 A.2d 753, 755 n.4 (Me. 1991), although we ruled for the defendant on other grounds, we suggested that the trial court was correct in

requiring the defendant to prove that the destroyed evidence was apparently exculpatory *and* that the State acted in bad faith. Some of our other cases may similarly be seen as blending the separate standards developed in *Trombetta* and *Youngblood* into a single three-part test without clearly stating that, if the evidence was apparently exculpatory when it was lost, the defendant is not required to make a showing of bad faith.[3] *See Trombetta*, 467 U.S. at 489; *see, e.g., State v. Cruthirds*, 2014 ME 86, ¶ 29, 96 A.3d 80 (stating that there are three elements the defendant must prove); *State v. Kremen*, 2000 ME 117, ¶ 15, 754 A.2d 964 (stating that even when the lost evidence is apparently exculpatory, bad faith "must be present"); *State v. Lewis*, 584 A.2d 622, 625 (Me. 1990) (stating that the defendant must prove that the lost evidence was apparently exculpatory and that the State acted in bad faith).[4]

---

[3] For example, we stated in *State v. Kremen*:

> The State's failure to preserve evidence does not violate a criminal defendant's right to a fair trial unless (1) the evidence possesses an exculpatory value that was apparent before the evidence was destroyed, (2) the defendant would be unable to obtain evidence of comparable value by other reasonably available means, and (3) the State acted in bad faith in failing to preserve potentially useful evidence. All three elements must be present in order for [the defendant's] right to a fair trial to be found to have been violated.

2000 ME 117, ¶ 15, 754 A.2d 964 (citation omitted) (quotation marks omitted).

[4] Although the principles derived from *Trombetta* and *Youngblood* were not always precisely articulated in these cases, their outcomes were unaffected because in *Cruthirds*, *Kremen*, and *Lewis*, we determined that the evidence at issue was not apparently exculpatory before concluding that the defendant had not proved bad faith, and in *Cyr* we affirmed the trial court's dismissal of the charges on other grounds. *See State v. Cruthirds*, 2014 ME 86, ¶ 32, 96 A.3D 80; *Kremen*, 2000 ME 117, ¶ 16, 754 A.2d 964; *State v. Cyr*, 588 A.2d at 756-57; *State v. Lewis*, 584 A.2d at 625.

8

[¶15] We therefore clarify that, to determine whether the State's failure to preserve evidence violated a defendant's right to a fair trial, the trial court is required to conduct a bifurcated analysis. First, the court must determine whether the evidence possessed "an exculpatory value that was apparent before the evidence was destroyed." *Trombetta*, 467 U.S. at 489. If so, then the defendant must show only that the evidence was "of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means." *Id.* If, however, the exculpatory value of the evidence was not apparent at the time of its loss or disappearance, the defendant cannot establish a constitutional deprivation without proof that the State also acted in bad faith in failing to preserve the evidence. *Youngblood*, 488 U.S. at 57-58.

[¶16] Here, the court did not reach the question of whether the evidence was apparently exculpatory when it was lost, instead finding only that Cote had not proved bad faith on the part of the State and denying his motion on that basis. Pursuant to federal constitutional jurisprudence, the court's analysis was erroneous because it required Cote to prove bad faith without first considering whether the lost recording was the type of evidence that, pursuant to *Youngblood*, would have required Cote to prove bad faith in the first place.

[¶17] The court did not err, however, in its ultimate determination that the loss of the recording did not violate Cote's due process rights, because even though

the court did not address the issue, the only conclusion allowed by the evidence is that the missing recording was not apparently exculpatory at the time of its disappearance. Cote contends that the exculpatory value in the recorded interview arises from two discrepancies between the victim's statements in the interview and statements she made later, after Cote was arrested. First, the victim stated in the 1994 interview that the assaults occurred in approximately 1991 or 1992, while the indictment alleges, and the victim testified at trial, that the assaults occurred in 1990. Second, the detective's report of the interview suggests that the victim may not have stated then that the defendant forced her to have anal intercourse or to engage in oral-genital contact, which was the conduct that she described at trial.

[¶18] Any exculpatory value of the 1994 recording is therefore based on its inconsistency with the victim's statements that were not made earlier than 2012, when the recording was confirmed to be missing. There is no evidence that at the time the recording disappeared the victim had made any statements that conflicted with what she said during the interview. To the contrary, the recorded statement of the victim, accusing Cote of sexual assault, appeared to be entirely inculpatory. *See Cruthirds*, 2014 ME 86, ¶ 31, 96 A.3d 80 (affirming the trial court's finding that the victim's clothing did not have apparent exculpatory value where "there was no thought of an alternative suspect" at the time the evidence was destroyed).

We therefore must conclude that when it went missing, the recording did not have any apparent exculpatory value.

[¶19]  Because the missing recording was, at most, only potentially useful, Cote must prove that the State acted in bad faith in failing to preserve it.  The trial court found that "no evidence was presented regarding the reasons for lack of availability of the tape-recorded interview, or what led to the loss or destruction of the tape . . . ," and it concluded that Cote had not proved that the State acted in bad faith.  That finding was not clearly erroneous.[5]

[¶20]  Because the evidence establishes that the missing recording was not apparently exculpatory at the time it was lost and because the court did not err in concluding that the State did not act in bad faith in causing its disappearance, Cote did not prove the elements necessary to establish a violation of his constitutional rights due to the State's loss of evidence.  Accordingly, the trial court did not err in denying his motion.

B.    Pre-indictment Delay

[¶21]  Cote also contends that the case should have been dismissed because of the delay between his alleged criminal conduct in 1990 and his indictment in

---

[5]   Even if losing the tape suggests that the State was negligent, bad faith requires more than negligence.  *See Arizona v. Youngblood*, 488 U.S. 51, 58 (1988) (holding that the negligent failure by the police to refrigerate evidence did not amount to bad faith); *State v. St. Louis*, 2008 ME 101, ¶ 7, 951 A.2d 80 (affirming trial court's finding of no bad faith despite "the State's serious oversight" in allowing a vehicle involved in an accident to be destroyed).

2012. To succeed in challenging the State's delay in seeking the indictment, Cote must make an initial showing that he suffered "actual and unjustifiable prejudice" as a result of the delay. *See Cyr*, 588 A.2d at 756; *see also United States v. Lovasco*, 431 U.S. 783, 790 (1977). "Only then does the court inquire as to the reasons for the delay that may be offered by the State and determine, on balance, whether the prejudice caused by the delay remains unjustified." *Cyr*, 588 A.2d at 756. Here, the court found that Cote did not make a showing of "actual and unjustifiable prejudice." We review for clear error the court's findings underlying a motion to dismiss due to pre-indictment delay. *See id*.

[¶22] Cote's sole argument in support of his claim that he was prejudiced by the pre-indictment delay is that, because the recording went missing during the delay, he was unable to present the recording at trial to emphasize the victim's two inconsistent statements. Cote was not prejudiced by the loss of the recording, however, because even without it, he could—and did—present evidence of inconsistencies in the victim's statements. *Cf. State v. Bilynsky*, 2007 ME 107, ¶ 42, 932 A.2d 1169 (upholding the denial of a motion to suppress for destruction of evidence where the defendant could make the same arguments using photographs of physical evidence even though the evidence itself had been destroyed). Both the victim and the detective who conducted the interview were available for cross-examination at trial, and Cote had a copy of the detective's

report that was written contemporaneously with the interview. Cote used the report to refresh the detective's memory and elicit testimony that the victim told him that the assaults happened in 1991 or 1992 and that her 1994 description of the nature of the assaults may have differed from her account at trial. Presenting the recording itself as evidence therefore would have had limited additional probative value.

[¶23] There are two other factors that support the conclusion that the delay has not prejudiced Cote. First, there is the real prospect that the recording would have worked to Cote's disadvantage by allowing the jury to hear an account of the assaults in a child victim's voice. Second, because the disappearance of the recording while in the State's custody was disclosed to the jury, its absence was actually beneficial to Cote because it allowed him to argue to the jury that the State's evidence was uncertain and unreliable due to the passage of time. Moreover, even if Cote could have shown prejudice, he has not established a causal connection between the delay and the lost tape because he has not shown that the recording would have been available had he been indicted before 2012. *See State v. Hutchins*, 433 A.2d 419, 423 (Me. 1981).

[¶24] Proving prejudice from pre-indictment delay is a "heavy burden." *U.S. v. McCoy*, 977 F.2d 706, 711 (1st Cir. 1992). Because Cote was able to present evidence about the victim's inconsistent statements without using the

recording, and because he has not shown that the recording would have been available had he been indicted earlier, the court did not err in finding that Cote failed to meet that burden.

The entry is:

Judgment affirmed.

---

**On the briefs:**

Stephen C. Smith, Esq., Bangor, for appellant Clarence Cote

R. Christopher Almy, District Attorney, and Susan J. Pope, Asst. Dist. Atty., Prosecutorial District V, Bangor, for appellee State of Maine

**At oral argument:**

Stephen C. Smith, Esq., for appellant Clarence Cote

Susan J. Pope, Asst. Dist. Atty., for appellee State of Maine

Penobscot Unified Criminal Docket docket number CR-2012-3407
FOR CLERK REFERENCE ONLY