STATE OF MAINE                                SUPERIOR COURT
CUMBERLAND, ss.                               CIVIL ACTION
                                              DOCKET NO. CR-20-04562


STATE OF MAINE,                    )
                                   )
                                   )
                                   )   ORDER
                                   )
        v.                         )
                                   )
WAYNE DIFFIN,                      )
                                   )
        DEFENDANT,                 )
                                   )


Before the Court is the Defendant, Wayne Diffin's ("Diffin") Motion for Clarification and

for Reconsideration. For the reasons set forth herein, the Defendant's Motion for Reconsideration

is DENIED. In addition to its denial, the Court offers a number of additional clarifications in an

attempt to resolve any remaining ambiguities among the parties.

## FACTUAL BACKGROUND

The factual background of this case is more fully set forth in this Court's prior order

dated October 27th, 2021. The relevant facts which underlie this specific motion are briefly

restated here for context.

This case arises out of an alleged assault which occurred on May 9th, 2020. On that

night, the victim alleges that Diffin sexually and physically assaulted her, and threatened her with

a firearm. Approximately forty eight hours after the assault, the victim visited the emergency

room at Southern Maine Healthcare where she was examined by medical professionals who

conducted a forensic sexual assault examination. While at the hospital, the victim reported her

alleged assault to the Windham Police Department who initiated an investigation. As part of this

1

investigation, the Police Department collected a urine sample from the victim as well as a sexual assault kit for testing. These two items are at the center of this controversy.

After interviewing Diffin, the Windham Police Department submitted their investigative report to the Cumberland County District Attorney's ("DA") Office for review. A Cumberland County grand jury, directed by Oxford County Assistant District Attorney ("ADA") Alexandra Winter, returned a five count indictment of Diffin on October 9th, 2020. ADA Winter was presiding over the grand jury because the Cumberland County DA's Office had referred the case to the Oxford County DA's office. This was done, as noted by the State in their response to the Defendant's Motion to Dismiss, because at the time of the alleged incident Diffin was a Cumberland County employee—conflicting the Cumberland County DA's Office out of the case.

On May 29th, 2021, before the referral to ADA Winter was made, Cumberland County ADA Katie Akers reviewed the case and made a decision not to proceed with charges against Diffin.[1] ADA Akers then notified the Windham Police Department of her decision not to charge and, pursuant to that decision, the Windham Police Department destroyed the sexual assault kit they collected from the victim and sent an email to the state crime lab letting them know there was no need to test the urine sample.

In initial discovery, Diffin, through counsel, received a chain of custody referencing the sexual assault kit and its destruction, but nothing regarding the urine sample. Later, the State produced a report from the crime lab which indicated that the urine sample had not been tested and intimated that it may have been destroyed. Based on this disclosure, and the destruction of the sexual assault kit, Diffin moved to dismiss the five count indictment alleging that the destruction of both the urine sample and the sexual assault kit constituted a violation of Diffin's due process rights.

---

[1] Presumably, the decision not to charge was made prior to the discovery of the conflict and the resulting referral.

2

One day after Diffin moved for dismissal, ADA Winter reported that the urine sample had actually been preserved, not destroyed, but had yet to be tested. To the Court's knowledge, the urine sample still has not been tested by the crime lab.

On October 27th, 2021, this Court issued an order denying Diffin's Motion to Dismiss, holding that Diffin's claims as to the located urine sample were now moot and denying Diffin's arguments with respect to the sexual assault kit. In that Order, the Court noted that the State had failed to comply with the Court's oral September 9th Order requesting that they submit the chain of custody for the urine sample to the Court. Immediately following the order, the State did so.

On November 2nd, 2021, Diffin filed a Motion for Clarification and Reconsideration. The State did not file a response to the instant Motion and the Court now renders this decision.

## STANDARD OF REVIEW

"Motions for reconsideration of an order shall not be filed unless required to bring to the court's attention an error, omission, or new material that could not previously have been presented." M.R. Civ. P. 7(b)(5). Rule 7(b)(5) is intended to deter disappointed litigants from seeking "to reargue points that were or could have been presented to the court on the underlying motion." *Shaw v. Shaw*, 2003 ME 153, ¶ 8, 839 A.2d 714. The Rule gives the court "more leeway" when responding to motions that are frequently brought to relitigate fully presented and decided issues. *Ten Voters of City of Biddeford v. City of Biddeford*, 2003 ME 59, ¶ 11, 822 A.2d 1196.

## DISCUSSION

In his Motion, Diffin invites the Court to reconsider its factual conclusion that the sexual assault kit "contained generally inculpatory evidence" at the time it was destroyed. Next, he asks

3

the Court to clarify its order with regard to the urine sample chain of custody and testing. Each of Diffin's requests are addressed in turn below.

## I. Reconsideration

Diffin's first request is that the Court reconsider its conclusion that the sexual assault kit contained generally inculpatory evidence at the time of its destruction. Diffin asserts that the Court improperly conflated the results of the sexual assault forensic examination of the victim with the results of an analysis of the sexual assault kit. This matters, according to Diffin, because the Court's denial of his Motion to Dismiss rested largely on its finding that the kit contained no "apparent exculpatory value" at the time of destruction.

At the outset, the Court acknowledges that it did conflate the two separate and distinct processes. As Diffin points out in his Motion, the physical exam of the victim is what led to the medical conclusions that she had "a laceration to her genitals and bruising to her cervix," not the sexual assault kit. *See* Order on Defendant's Motion to Dismiss, 6, Oct. 27, 2021. The sexual assault kit itself is physical evidence, collected from a victim, "designed to gather and preserve physical evidence following a rape allegation including DNA, semen, clothing and blood." (Def.'s Mot. Recons. 2.)[2]

As is clear now, the sexual assault kit itself was never tested prior to its destruction. The Court admits its factual error, but regardless, finds that the analysis of whether Diffin's Due Process rights were violated remains unchanged. Under the current test utilized in Maine for determining such a violation, they were not.[3]

---

[2] This distinction between the two was confirmed orally by the State at hearing on September 9th, 2021.

[3] The Court pauses to reflect on the Defendant's prior argument that the Supreme Court derived test adopted by the Law Court in *State v. Cote* for determining whether destruction of evidence constitutes a due process violation is too focused on deterrence of official misconduct. 2015 ME 78 ¶ 15, 118 A.3d 805. While the Court today doubles down on its previous denial of the Defendant's Motion, it notes further that Justice Connor's concurrence in *State v. Wai Chan*, 2020 ME 91, ¶ 21, 236 A.3d 471, may signal an opportunity for future litigation under the Due Process provisions of Maine's Constitution. In this Court's mind, a test which focuses more on fairness to the Defendant rather than on deterrence of official misconduct may indeed be warranted. *See* Norman C. Bay, *Old Blood, Bad*

4

To determine whether the State's failure to preserve evidence violated a defendant's right to a fair trial, the trial court is required to conduct a bifurcated analysis. *State v. Cote*, 2015 ME 78 ¶ 15, 118 A.3d 805. First, the court must determine whether the evidence possessed "an exculpatory value that was apparent before the evidence was destroyed." *Id.* If so, then the defendant must show only that the evidence was "of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means." *Id.* "If, however, the exculpatory value of the evidence was not apparent at the time of its loss or disappearance, the defendant cannot establish a constitutional deprivation without proof that the State also acted in bad faith in failing to preserve the evidence." *State v. Cote*, 2015 ME 78 ¶ 15, 118 A.3d 805.

Here, as noted in the Court's previous order, the central question is whether the sexual assault kit iteself contained *apparently* exculpatory evidence at the time of destruction. It is undisputed that the contents of the sexual assault kit could not be obtained by other means, and although disagreed with by the Defendant, he does not challenge the Court's prior finding that the State did not act in bad faith in destroying it. Accordingly, based on the corrected factual record, the Court reexamines its analysis of Diffin's Due Process claims regarding the Sexual Assault Kit's destruction.

Even though the kit was never tested, the Court still finds no merit in the Defendant's repeated assertions that the Sexual Assault Kit held *apparent* exculpatory value at the time of its destruction. This is true in spite of his repeated assertions that the kit "could have contained semen from another male" or "could have showed" evidence that the sexual contact with the Defendant was consensual. While it is certainly possible that the kit had the potential to produce

---

*Blood, and Youngblood: Due Process, Lost Evidence, and the Limits of Bad Faith*, 86 Wash. U. Law. Rev. 241 (2008); *compare Cote*, 2015 ME 78, ¶ 15, 118 A.3d 805; *with State v. Morales*, 657 A.2d 585, 593 (Conn. 1995) ("a trial court must decide each case depending on its own facts, assess the materiality of the unpreserved evidence and the degree of prejudice to the accused, and formulate a remedy that vindicates his or her rights.")

such evidence, the kit itself did not contain any "clearly visible . . . obvious . . . or manifest" exculpatory evidence when it was destroyed. *Apparent*, Merriam Webster Dictionary, (11th ed. 2020).

In the Court's prior order, it based its holding — in part — on the improper assumption that the kit contained generally inculpatory evidence. However, this finding only bolstered the Court's initial conclusion. It did not define it. Nullifying this factual conclusion does not change the ultimate outcome, but instead removes a point of emphasis used by this Court in reaching it. Accordingly, the Court declines the Defendant's Motion for Reconsideration of the Court's order denying his Motion to Dismiss.

## II.    Clarifications

Along with his Motion asking this Court to reconsider its ruling, the Defendant also seeks clarification of this Court's prior orders regarding the production of the chain of custody of the urine sample and the sample's testing. Acknowledging that some ambiguity may exist in the record over the Court's prior orders, the Court seeks to resolve it now.

First, the Court notes the Defendant's frustration with the discovery material provided by the State regarding the chain of custody of the urine sample. However, the Court sees no issue with what was provided. If the Defendant finds that the discovery provided is inadequate, he may move this Court for additional discovery pursuant to M.R.U. Crim. P. 16(d)(2).

The Court handles any remaining ambiguities through its orders below. At this time, the Court does not believe it appropriate to order that the State obtain and provide a comparative sample from the alleged victim.

The Court hereby orders as follows:

6

1. If the urine sample from the alleged victim has not been tested as of the date of this order, the State and the lab where the sample is held will test the sample and provide results to the Defendant within ninety (90) days.

2. Upon testing of the sample, a portion of the victim's urine sample will be preserved for independent testing by the Defendant. This follows the Court's oral order on September 9th, 2021, ordering the same.

Dated: January 3, 2022

Roland A. Cole
Justice, Maine Superior Court

7

STATE OF MAINE                                    SUPERIOR COURT
CUMBERLAND, ss.                                   CIVIL ACTION
                                                  DOCKET NO. CR-20-04562


STATE OF MAINE,                     )
                                    )
                                    )
                                    )          ORDER ON DEFENDANT'S
        v.                          )          MOTION TO DISMISS
                                    )
WAYNE DIFFIN,                       )
                                    )
        DEFENDANT,                  )
                                    )


Before the Court is Defendant Wayne Diffin's ("Diffin") Motion to Dismiss the five

count indictment against him. For the reasons set forth herein, the Defendant's Motion to

Dismiss is Denied.

## FACTUAL BACKGROUND

On October 9th, 2020 a five count indictment was returned by a Cumberland County

grand jury directed by Oxford County Assistant District Attorney ("ADA") Alexandra Winter.[1]

The five counts are: (1) Gross Sexual Assault charged under 17-A M.R.S. § 253(1)(A); (2)

Aggravated Assault charged under 17-A M.R.S. § 208-D(1)(D); (3) Domestic Violence Criminal

Threatening with a Dangerous Weapon charged under 17-A M.R.S. § 209-A(1)(A); (4) Domestic

Violence Assault charged under 17-A M.R.S. § 207(A)(1)(A); and (5) Criminal Restraint

charged under 17-A M.R.S. § 302(1)(B)(1).

---

[1] The Cumberland County District Attorney's Office was the first to review the case against Diffin. Ultimately, that office elected not to pursue charges against Diffin, but was also conflicted out as Mr. Diffin is a Cumberland County employee. At the request of Cumberland County District Attorney Jonathan Sahrbeck, the case was transferred to the Oxford County District Attorney's Office for a charging review. Ultimately, Oxford County Assistant District Attorney Alexandra Winter decided that she would take the case to a grand jury.

1

The following facts regarding the incident that lead to the indictment are taken from the parties' statements of fact submitted as part of the Defendant's Motion to Dismiss and the State's reply. The five count indictment against Mr. Diffin arises from an alleged incident that occurred on May 9th, 2020. (State's Rep. Mot. Dismiss 1.) The alleged victim reported that after meeting Mr. Diffin on Facebook in early May, the two of them engaged in consensual sex on May 6th, 2020. (State's Rep. Mot. Dismiss 1.) Three nights later, on May 9th, she again visited Mr. Diffin and this time reported that any sexual relations between them were not consensual. (State's Rep. Mot. Dismiss 1.) She alleges that on three separate occasions that night, Mr. Diffin strangled her. (State's Rep. Mot. Dismiss 2.) She also reports that he forced her to perform oral sex on him, forcefully penetrated her anally with his fingers, and forcefully penetrated her vagina with his penis. (State's Rep. Mot. Dismiss 2.)

While this was occurring, the Defendant allegedly kept a loaded handgun on his nightstand within view of the victim. (State's Rep. Mot. Dismiss 2.) She alleges that Mr. Diffin loaded and unloaded it at least once in a threatening manner. (State's Rep. Mot. Dismiss 2.) The morning after the alleged assault, the victim was able to escape while the Defendant slept. (State's Rep. Mot. Dismiss 2.)

On May 11th, 2020, the victim went to the emergency room at Southern Maine Healthcare where she was examined by medical professionals and a sexual assault forensic examination was conducted. (State's Rep. Mot. Dismiss 2.) While at the hospital, the victim reported the incident to the Windham Police Department and they initiated an investigation. (State's Rep. Mot. Dismiss 2.) As part of this investigation, the Police Department collected a urine sample from the alleged victim as well as a sexual assault kit. (Mot. Dismiss 2.)

After interviewing the suspect, the Windham Police Department submitted their investigative report to the Cumberland County District Attorney's ("DA") Office. (State's Rep. Mot. Dismiss 3.) As discussed, *supra* n.2, that office declined to prosecute the case. (State's Rep. Mot. Dismiss 3.)

The Windham Police Department was notified of the Cumberland County prosecutor's decision and on June 1st, 2020, they gave instructions to the lab not to test the urine sample. (Mot. Dismiss 5.) Specifically, the officer told the inquiring chemist that the urine sample "was from the "victim" who was suspected of having significant drugs and alcohol in her system. The DA's office is not prosecuting the case so it does not need to be tested anymore." (Mot. Dismiss 5.) The chemist marked the sample as a "no test" and noted that the lab would store it for six months, at which time it would be destroyed. (Mot. Dismiss 5.) Also based on the Cumberland County ADA's email, the sexual assault kit collected by the Windham Police Department was destroyed on June 16th, 2020. (Mot. Dismiss 3.)

Initial discovery that was provided to the Defense only referenced the chain of custody of the sexual assault kit. (Mot. Dismiss 4.) Later, the State produced a report from the crime lab which contained a certificate of drug analysis for the urine sample. (Mot. Dismiss 4.) That certificate said: "NO EXAM PER OFFICER GALLANT VIA EMAIL". (Mot. Dismiss 4.) Based on this disclosure, and the destruction of the sexual assault kit, the Defendant moved to dismiss the indictment alleging that such destruction of both pieces of evidence were a violation of Mr. Diffin's due process rights.

On the day after the Defendant moved to dismiss the case, the State, via ADA Winter, reported that the urine test had actually been preserved and not destroyed. (Mot. Dismiss 4-5.) After the State reported that the urine sample was still in tact, it filed its reply to the Defendant's

3

Motion to Dismiss alleging that any argument as to the urine sample's destruction is moot and responding substantively to the Defendant's argument for dismissal based on the destruction of the sexual assault kit. (State's Rep. Mot. Dismiss 6.)

A hearing on all pending motions was held on September 9th, 2021. At hearing, the Defense represented that they had requested further discovery from the State regarding the urine sample, yet had received none. Specifically, the Defense had requested that a portion of the urine sample be preserved for independent testing and that the prosecution be responsible for production of all requested information. The Court declined to issue such an order but reminded the State that they are required to fulfill their discovery obligations which include, in this case, preservation of part of the urine sample for independent testing.

At the September 9th hearing, the Court did order the State to submit, within thirty days, a document containing the chain of custody of the urine sample. Now more than thirty days removed from this hearing, no chain of custody has been submitted to the Court. Against this backdrop, the Court now addresses Diffin's Motion to Dismiss.

## DISCUSSION

The Defendant's Motion to Dismiss the five count indictment against Diffin centers upon two distinct claims. First, that the destruction of the alleged victim's urine sample was done in violation of Diffin's right to a fair trial because the urine test was apparently exculpatory at the time of destruction, or the destruction was done in bad faith. Second, that the destruction of the sexual assault kit also violated Diffin's due process rights because the kit was apparently exculpatory at the time of destruction, or the destruction was done in bad faith.

### I.    Urine Sample

4

First, the Defendant argues that the destruction of the urine sample by the crime lab was done in violation of Mr. Diffin's constitutional right to a fair trial. In supplemental discovery, the State reported that the alleged victim's urine sample had been destroyed. However, after calling the crime lab, ADA Winter reported that the sample had actually been preserved and that it was now being sent for testing which could take up to two months.

Since the sample is still in existence, the Defendant's claim that the destruction of the sample was violative of his due process rights is moot. Therefore, the court denies Diffin's Motion to Dismiss on this basis. Notably, once the State complies with the Court's September 9th Order, and files the chain of custody for the urine sample, the Defendant may file a new pleading based on the content of that evidence or may use that evidence to attack the credibility of the urine sample at trial.

## II.   Sexual Assault Kit

Second, the Defendant argues that the destruction of the sexual assault kit by the Windham Police Department on June 16th, 2020, was done in violation of Diffin's due process right to a fair trial. He first claims that the kit was apparently exculpatory at the time of destruction, or if not, that the destruction was done in bad faith. Alternatively, he claims that the destruction, even if done in good faith, violates his fundamental right to a fair trial. It is stipulated that the kit was destroyed in June of 2020.

### A. Was the sexual assault kit apparently exculpatory?

To determine whether the State's failure to preserve evidence violated a defendant's right to a fair trial, the trial court is required to conduct a bifurcated analysis. *State v. Cote*, 2015 ME 78 ¶ 15, 118 A.3d 805. First, the court must determine whether the evidence possessed "an exculpatory value that was apparent before the evidence was destroyed." *Id.* If so, then the

5

defendant must show only that the evidence was "of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means." *Id.*

In the instant case, the central issue is whether the sexual assault kit contained apparent exculpatory value at the time of its destruction. It is clear that the defendant could not have obtained comparable evidence by other reasonably available means.

Exculpatory evidence is "evidence tending to establish a criminal defendant's innocence." Black's Law Dictionary (11th ed. 2019). Evidence is exculpatory when it "may make the difference between conviction and acquittal had it been disclosed and used effectively." *United States v. Bagley*, 473 U.S. 667, 676 (1985).

In the instant case, the Defendant contends that the sexual assault kit contained apparent exculpatory value at the time of destruction because it "could have contained semen from another male" or "could have showed" evidence that the sexual contact with the Defendant was consensual. (Mot. Dismiss 9.)

The State responds by saying that any evidence contained within the sexual assault kit at the time of its destruction was actually inculpatory. The report produced after initial testing on the kit stated that the victim had a laceration to her genitals and bruising to her cervix. The State alleges that these facts tend to inculpate the Defendant because they refute his claims that the sex was consensual.

The Defendant fails to refute the State's contentions and does not assert any exculpatory value that the kit contained upon its return to the police station and before destruction. Here, although the Defendant raises multiple ways in which the sexual assault kit *could potentially have been exculpatory*, their Motion to Dismiss and subsequent filings fail to raise any *apparent exculpatory value* that the sexual assault kit contained at the time of its destruction.

6

On June 12th, 2020 when the sexual assault kit was returned to the Windham Police Department after testing which produced generally inculpatory evidence, it contained no apparent exculpatory value. Additionally, in the four days between its return to the Windham Police Department and its destruction, no apparent exculpatory value of the kit arose. Accordingly, absent a showing of bad faith by the Defendant, his right to a fair trial was not violated.

**B. Was the Sexual Assault Kit Destroyed in Bad Faith?**

"If, however, the exculpatory value of the evidence was not apparent at the time of its loss or disappearance, the defendant cannot establish a constitutional deprivation without proof that the State also acted in bad faith in failing to preserve the evidence." *State v. Cote*, 2015 ME 78 ¶ 15, 118 A.3d 805. The destruction of evidence may be done in bad faith where the State intends to conceal exculpatory evidence or purposefully avoid discovery obligations. *State v. Wai Chan*, 2020 ME 91 ¶ 21, 236 A.3d 471.

The question of bad faith is a fact-specific inquiry focusing on the reasons behind action or inaction leading to the claimed due process violation. *Wai Chan*, 2020 ME 91, ¶ 20, 136 A.3d 471. *See, e.g., State v. Cruthirds*, 2014 ME 86 ¶ 32, 96 A.3d 80(affirming a finding of no bad faith where police destroyed a sexual assault victim's clothing, given that the defendant had been positively identified by an eyewitness and "nothing beyond bare speculation pointed to an alternative suspect" when the clothing was destroyed); *State v. St. Louis*, 2008 ME 101, ¶ 7, 951 A.2d 80(affirming a finding of no bad faith "despite the State's serious oversight" in allowing an insurance company to destroy a vehicle involved in an accident.)

In the instant case, there are no facts indicating that the State acted in bad faith when it destroyed the sexual assault kit. The Defendant maintains that a Windham Police Officer

7

"intentionally destroyed the sexual assault kit . . . after being told by an attorney for the State that the case was not being prosecuted." This statement is true in a literal sense, and it was no doubt the Officer's intention to destroy the kit after receiving the Prosecutor's message. However, this intent, supported by a credible message from an Assistant District Attorney declining to prosecute the case, is not the intent that *Cole* or its progeny contemplates. As the Law Court has noted, the intent to be punished in a bad faith analysis is the intent to destroy evidence because of its exculpatory value or to avoid discovery obligations. *See Wai Chan*, 2020 ME 91 ¶ 21, 236 A.3d 471.

The Defense contends that no such intent is needed and relies on dicta in *Wai Chan* and *Cole* to support their contention that something less than this malintent can support a finding of bad faith. Specifically, Diffin suggests, the State's reckless disregard—to the extent it can be characterized as such—for the potentially exculpatory value of the sexual assault kit is enough. The Law Court however, has never held that such reckless disregard constitutes bad faith and making such a finding would be inappropriate here. *See Wai Chan*, 2020 ME 91 n.12, 136 A.3d 471.

The Officer destroyed the sexual assault kit because he justifiably believed that the case was not being prosecuted due to the representation of an Assistant District Attorney. The Officer did not destroy the kit because it tended to establish the Defendant's innocence or because the State was weary of providing the kit to the Defense. Although the kit's destruction was negligent at best, and indicative of a disappointing level of carelessness, that is not the inquiry this court is charged with. Absent any sort of express intent to destroy exculpatory evidence, the Defendant cannot show bad faith on the part of the State.

### C. Does the destruction of the Sexual Assault Kit, even if done in good faith, make a trial fundamentally unfair?

Defendant lastly argues that even if the destruction of the sexual assault kit was not done in bad faith, allowing such evidence to be used at trial would be fundamentally unfair. In support, he relies on dicta in *Arizona v. Youngblood*, 488 U.S. 51, 60-61 (1988), and a number of cases from other states to make the argument that a state's constitution may offer greater protection to a Defendant than the Supreme Court derived test in *Cote*. Specifically, Diffin suggests that this Court take a step that Justice Connors previewed when she wrote separately in *State v. Wai Chan* to note the considerable criticism that the *Cote* test, adopted from Supreme Court decisions in *Youngblood* and *California v. Trombetta*, 467 U.S. 479 (1984), has received. 2020 ME 91, ¶ 31, 236 A.3d 47(Connors, J. concurring).[2]

The Law Court, in *Wai Chan*, declined to adopt any alternative standard. Because *Cote* and *Wai Chan* remain controlling law, the Court declines to conduct any alternative analysis.

## CONCLUSION

In conclusion, because the urine sample has been produced by the State, the Court need not determine whether the destruction of the urine sample violated the Defendant's due process rights. However, once the State produces the chain of custody of the urine sample, the Court could see further motions from the Defendant. The destruction of the sexual assault kit by the Windham Police Department also did not violate Diffin's due process rights. The exculpatory value of the kit was not apparent at the time of destruction and the kit was not destroyed in bad faith.

---

[2] In her concurrence, Justice Connors expressed frustration that the current test for determining a due process violation based on the destruction of evidence, focuses too much on the goal of deterring officer misconduct and fails to adequately consider fairness to the defendant. *Wai Chan*, 2020 ME 91 ¶ 31, A.3d 471. She suggested that in the future, there may be an opportunity for the Law Court to develop an alternative test that grants the court more discretion in determining whether a constitutional violation has occurred if the State fails to fulfill its duty to preserve evidence. For example, In *Commonwealth v. Olszewski*, the Massachusetts high Court held that "when potentially exculpatory evidence is lost or destroyed, the deciding Court must "weigh the culpability of the [State], the materiality of the evidence and the potential prejudice to the defendant."" 519 N.E.2d 587 (Mass. 1988).

Dated: October 27, 2021

_____
Roland A. Cole
Justice, Maine Superior Court

10

REC'D CUMB CLERKS OFC
OCT 27 '21 PM12:05