MAINE SUPREME JUDICIAL COURT                                    Reporter of Decisions
Decision:      2022 ME 27
Docket:        And-21-216
Argued:        April 6, 2022
Decided:       May 17, 2022

Panel:         MEAD, JABAR, HUMPHREY, HORTON, and CONNORS, JJ.

## STATE OF MAINE

v.

## CLIFTON THOMAS

JABAR, J.

[¶1]  Clifton Thomas appeals from a judgment of conviction of six offenses,[1] entered by the trial court (Androscoggin County, *McKeon, J.*) after a three-day jury trial.  Thomas challenges the denial of his request for sanctions for the State's alleged discovery violations and the denial of his motion to dismiss because of the makeup of the jury venire.  Thomas also contends that the trial court committed an obvious error by admitting testimony of a police officer that contained hearsay; that the trial court abused its discretion by

---

[1]  The offenses for which Thomas was charged were domestic violence criminal threatening with a dangerous weapon (Class C), 17-A M.R.S. § 209-A(1)(A) (2022) (Count 1); reckless conduct with a firearm (Class C), 17-A M.R.S. § 211(1) (2022) (Count 2); domestic violence terrorizing (Class D), 17-A M.R.S. § 210-B(1)(A) (2022) (Count 3); threatening display of a weapon (Class D), 25 M.R.S. § 2001-A(1)(A) (2022) (Count 4); domestic violence assault (Class D), 17-A M.R.S. § 207-A(1)(A) (2022) (Count 5); domestic violence assault (Class D), 17-A M.R.S. § 207-A(1)(A) (2022) (Count 6); possession of a firearm by a prohibited person (Class C), 15 M.R.S. § 393(1)(A-1)(3) (2022) (Count 7). The jury found Thomas not guilty on Count 5.

failing to admit a letter that Thomas claimed was written on behalf of the victim because it could not be authenticated; and that there was insufficient evidence for the jury to convict him. We affirm.

## I. BACKGROUND

### A.    Facts

[¶2] "Viewing the evidence in the light most favorable to the jury's verdict, the trial record supports the following facts." *See State v. Murray*, 2021 ME 47, ¶ 2, 259 A.3d 1276. On February 7, 2020, Thomas beat the victim—a former romantic partner and the mother of Thomas's child—causing swelling and bruising to her face. At the time, the victim did not report this incident to the police.

[¶3] On February 26, 2020, Thomas entered the victim's home and began yelling at her. He drew a firearm, loaded it, and pointed it at her while she had a child on her lap. He took the victim's cell phone from her and stated that he would give it back if she would let him shoot her in the leg. After hearing a noise outside, Thomas left with the victim's cell phone. Once Thomas departed, the victim left the apartment, brought her children to safety, and reported this incident, as well as the incident on February 7, to the police.

[¶4]  On February 27, 2020, the police learned that Thomas might be staying at an apartment in Lewiston.  The police reviewed surveillance video of the building and observed Thomas at the building.  The police then searched the apartment and found a .22-caliber handgun, ammunition, and the victim's cell phone.[2]  The victim later said that the gun found in the apartment was not the gun that Thomas had threatened her with.

## B.    Arrest and Indictment

[¶5]  Thomas was arrested on February 27, 2020.  At the time of his arrest, the police found two cell phones on his person.  The next day, the cell phones were turned over to the New York Police Department because they were related to an ongoing investigation in New York.

[¶6]  The State filed a two-count complaint against Thomas for the domestic violence incidents that occurred on February 7 and February 26.  On July 6, 2020, an Androscoggin County Grand Jury returned a six-count indictment for the events that allegedly occurred in February 2020.  On October 5, 2020, the Androscoggin County Grand Jury returned a seven-count superseding indictment adding an additional charge of possession of a firearm by a prohibited person.  Thomas pleaded not guilty on all counts.

---

[2] The legality of the entry and search of the apartment is not at issue on appeal.

## C. Motion for Discovery

[¶7] On November 17, 2020, Thomas filed a motion for discovery seeking the two cell phones the police seized from him when he was arrested and that were in the custody of the NYPD. Thomas claimed the phones contained exculpatory evidence and sought sanctions against the State for not providing them. The court (*Stanfill, J.*) held a hearing on this motion on March 26, 2021. On April 23, 2021, the court denied the motion, determining that "the Lewiston Police Department had no particular reason to think the cell phones would have exculpatory information or indeed any relevant information on them when [the phones] were turned over to the NYPD," and that there was "no showing that [evidence on the phones] was materially exculpatory."

## D. Jury Selection and Motion to Dismiss

[¶8] The jury was selected on May 10, 2021. While 350 prospective jurors were summonsed to be in the jury venire, only 165 potential jurors appeared. According to the court's observations, there were three persons of color in the jury venire.

[¶9] Thomas, who is African American, and two other African American defendants in other cases shared the same jury venire. Each of the defendants filed a motion to dismiss due to the failure of the jury venire to represent a fair

cross section of the community. The court (*McKeon, J.*) held a hearing on all three motions in all three cases on May 13, 2021. The court stated that it had "no information . . . actually on the record except for perhaps [the 2019 Androscoggin County] census stat[istics] [provided by the State] and the jury data the Court accumulated in preparation for today." Instead of denying the motion, the court gave Thomas the option of continuing his trials so that he could better develop his arguments, but Thomas elected to proceed with the jury trial. The court denied the motion to dismiss.

## E.     The Trial

[¶10]  A three-day jury trial was held on May 18 through May 20, 2021. Before the jury was brought into the courtroom for the first time, Thomas indicated that he was going to cross-examine the victim about a letter that she allegedly sent him while he was incarcerated in the county jail. The State questioned the authenticity of the letter. The court deferred ruling on the matter, indicating that, if the victim were to deny that she authored the letter, then Thomas would have to authenticate it with other evidence. When the victim was asked about the letter outside the presence of the jury, she denied having written the letter. When Thomas later tried to present the letter as

evidence during his testimony, the court did not admit the letter, ruling that there was insufficient evidence to authenticate it.

[¶11]  The State called the victim, who testified about her relationship with Thomas and the incidents that occurred in February 2020.  On cross-examination, Thomas attacked the victim's credibility, introducing a false statement made by the victim to the police, a 9-1-1 call that refuted her claim that she drove to the police station on February 26, and other examples of purported embellishment.  The State also called the Lewiston police officer who first interviewed the victim, and he testified to statements that the victim made on February 26, 2020, that were consistent with the victim's testimony at trial.  Thomas did not object to the officer's testimony regarding the victim's statements to him.

[¶12]  The jury found Thomas guilty of Counts 1, 2, 3, 4, and 6.  After the jury was excused, the court found Thomas, a convicted felon, guilty of Count 7.  The court sentenced Thomas to three years and six months' incarceration on Counts 1, 2, and 7, concurrent with each other; 364 days' incarceration on Counts 3 and 4 to run concurrently with each other and with Count 1; and 364 days' incarceration and two years' probation on Count 6, to run

consecutively to the other counts. Thomas timely appealed. 15 M.R.S. § 2115 (2022); M.R. App. P. 2B(b)(1).

## II. DISCUSSION

[¶13] Thomas makes five claims on appeal: (1) the court should have dismissed all charges as a discovery sanction after the state failed to preserve the exculpatory evidence that was allegedly on the cell phones that were turned over to the NYPD; (2) the court erred when it admitted statements of a police officer that constituted hearsay; (3) the court abused its discretion by determining that a letter offered by Thomas was not properly authenticated; (4) the court should have dismissed all charges because the jury pool did not represent an adequate cross-section of the community; and, (5) there was insufficient evidence for a jury to convict Thomas of his crimes.[3]

## A.    Discovery Violation

### 1.    State's Duty to Preserve Evidence

[¶14] Thomas argues that the State's failure to preserve the exculpatory evidence that was allegedly on the cell phones turned over to the NYPD

---

[3] Thomas has asserted and developed his constitutional claims based only on the Constitution of the United States, not the Maine Constitution, and therefore we review his claims by applying federal law and principles. *See State v. Philbrick*, 481 A.2d 488, 493 n.3 (Me. 1984) ("Because the Defendant does not argue that his state constitutional rights were infringed, we depart from our preferred practice of deciding issues on the basis of our state constitution before we address federal constitutional questions. Just as certain considerations of judicial restraint ordinarily impel us to ground a decision on state, rather than federal[,] law, other considerations of judicial restraint lead

8

constituted a discovery violation, entitling him to a dismissal as a sanction. *See* M.R.U. Crim. P. 16(e). Although "prosecutors have a constitutional duty to preserve material evidence" to "protect a criminal defendant's right to a fair trial," the defendant bears the burden of proving a violation of his constitutional rights. *State v. Cote*, 2015 ME 78, ¶¶ 11, 14-15, 118 A.3d 805. We have instructed that courts undertake a "bifurcated analysis" in which

> [f]irst, the court must determine whether the evidence possessed an exculpatory value that was apparent before the evidence was destroyed. If so, then the defendant must show only that the evidence was of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means. If, however, the exculpatory value of the evidence was not apparent at the time of its loss or disappearance, the defendant cannot establish a constitutional deprivation without proof that the State also acted in bad faith in failing to preserve the evidence.

*Id.* ¶ 15 (citations and quotation marks omitted).

### 2. Application

[¶15] In conducting the first part of the analysis, we conclude that Thomas has not shown that either cell phone contained apparent exculpatory value. The motion court (*Stanfill, J.*) heard testimony from the detective who first entered the phones into evidence at the Lewiston Police Department; he

us to refrain from deciding important state constitutional issues that have been neither briefed nor argued." (citations omitted)).

testified that he did not review the data on the phones before they were sent to the NYPD. Similar testimony was elicited from another detective and the Lewiston Police Department's evidence manager. There is no evidence that the police had any indication that the phones had exculpatory value. There is "a distinction between apparently exculpatory evidence and potentially useful evidence." *Cote*, 2015 ME 78, ¶ 13, 118 A.3d 805. Thomas did not offer any evidence indicating that either cell phone had any specific exculpatory evidence but instead relied on the generalization that domestic partners communicate with each other using such devices.[4]

[¶16] Because there was no exculpatory value that was apparent at the time the phones left Lewiston Police Department custody, Thomas had the burden to prove that the police acted in bad faith in failing to preserve the cell phones. An act of "bad faith" requires more than mere negligence. *Id.* ¶ 19 n.5.

[¶17] In the second part of the bifurcated analysis, Thomas must prove that the phones contained "potentially useful" evidence and that "the State acted in bad faith in failing to preserve [the evidence]." *See id.* ¶ 19. Thomas's

---

[4] Even if we agreed that the exculpatory value of the phones should have been apparent to authorities, Thomas would still have to show "that the evidence was of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means." *State v. Chan*, 2020 ME 91, ¶ 14, 236 A.3d 471 (quotation marks omitted). However, Thomas admits that he "did possess some copies of texts" between the victim and himself, and these text messages were submitted as evidence at trial.

motion asserted that the authorities acted in bad faith when they "intentionally disposed" of the phones, but he presented no evidence or legal authority to support his contention. Further, the court found that the police did not act in bad faith, and this finding is supported by the evidence.

[¶18] We conclude that the court did not err in determining that Thomas failed to establish the necessary elements proving that the police violated their duty to preserve exculpatory evidence and that therefore the State's failure to provide access to the seized cell phones did not deny Thomas his constitutional right to a fair trial.

## B.    Hearsay Evidence

[¶19]  Thomas next argues that the trial court (*McKeon, J.*) committed obvious error when it admitted testimony of a Lewiston police officer that constituted hearsay under M.R. Evid 801. As Thomas recognizes, because Thomas failed to object to the officer's testimony, we review the court's admission of the evidence for obvious error. *See State v. Dolloff*, 2012 ME 130, ¶ 52, 58 A.3d 1032. "To demonstrate obvious error, the defendant must show that there is '(1) an error, (2) that is plain, and (3) that affects substantial rights.'" *Id.* ¶ 35 (quoting *State v. Pabon*, 2011 ME 100, ¶ 29, 28 A.3d 1147). "[I]f these three conditions are met, we will set aside a jury's verdict only if we

conclude that (4) the error seriously affects the fairness and integrity or public reputation of judicial proceedings." *Dolloff*, 2012 ME 130, ¶ 35, 58 A.3d 1032 (quotation marks omitted).

[¶20] "Hearsay is an out-of-court statement made by a declarant offered in evidence by a witness to prove the truth of the matter asserted and is generally inadmissible." *Needham v. Needham*, 2022 ME 7, ¶ 11, 267 A.3d 1112; *see* M.R. Evid. 801, 802. However, Maine's rules of evidence set forth several categories of statements that are not hearsay. M.R. Evid. 801(d). One such statement is a declarant-witness's prior statement that "[i]s consistent with the declarant's testimony and is offered: (i) to rebut an express or implied charge that the declarant recently fabricated it or acted from a recent improper influence or motive in so testifying; or (ii) to rehabilitate the declarant's credibility as a witness when attacked on another ground." M.R. Evid. 801(d)(1)(B). This type of statement can be used "both for its rehabilitative and substantive effect." M.R. Evid. 801 Advisory Committee Note – August 2018.

[¶21] Here, the officer testified about what the victim had told him on the night of February 26, 2020, when she first reported the February 2020 incidents. This included her statement that Thomas had brandished a gun at

her, that he had made threats to her, that Thomas had taken her cell phone, and that there had been previous episodes of domestic violence that Thomas had committed against her. At this point in the trial, the victim had already testified to these events and had been cross-examined by Thomas. During the cross-examination, to demonstrate she was unable to "get her story straight," Thomas attacked her character for truthfulness, brought her memory and recollection into question, and questioned the consistency of her statements.

[¶22] The officer's testimony supported the victim's credibility after Thomas attacked it and was consistent with the victim's in-court testimony. These statements by the victim to the officer were not hearsay and were admissible under M.R. Evid. 801(d)(1)(B). The trial court did not commit obvious error in admitting the officer's testimony.

## C. Admissibility of the Letter

[¶23] Thomas next argues that the trial court abused its discretion when it did not allow him to introduce a letter that he claimed that the victim had sent him while he was in the Androscoggin County Jail. We review a trial court's ruling on admissibility of evidence for abuse of discretion. *State v. Hussein*, 2019 ME 74, ¶ 10, 208 A.3d 752. "A court abuses its discretion in ruling on evidentiary issues if the ruling arises from a failure to apply principles of law

applicable to the situation[,] resulting in prejudice." *Id.* (quotation marks omitted).

[¶24] The standard for authentication is articulated in M.R. Evid. 901(a), which states that "[t]o satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." This is "a flexible approach to authentication reflecting a low burden of proof." *Hussein*, 2019 ME 74, ¶ 11, 208 A.3d 752.

[¶25] Here, the letter in question, which is unsigned, was purportedly written on behalf of the victim and claimed that the victim was angry with Thomas at the time of her report and that she had given inconsistent statements to the police. Thomas offered with the letter an envelope addressed to Thomas at the Androscoggin County Jail. However, when asked about the letter outside the presence of the jury, the victim denied writing the letter or having anyone else write the letter for her. She admitted that she sent the envelope to the jail but stated that it contained photographs and not the letter. The person who Thomas claimed wrote the letter on the victim's behalf was in the courtroom and was a listed witness for Thomas, but she was not called to testify. Although

Thomas testified that he received the letter, he produced no further evidence that demonstrated that the letter was sent by the victim or on her behalf.

[¶26]  In a sidebar conversation, the court clearly articulated Rule 901 and stated that Thomas—without a handwriting expert, the testimony of the writer, or even the original letter—was unable to meet his burden.  The court did not abuse its discretion when it did not admit the unauthenticated letter.

**D.    Jury Venire**

[¶27]    The Sixth Amendment guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right to a . . . trial, by an impartial jury of the State and district wherein the crime shall have been committed."  U.S. Const. amend. VI.  This jury must be drawn from a "fair cross section of the community," but a "fair cross section" does not guarantee that juries be "of any particular composition."  *Taylor v. Louisiana*, 419 U.S. 522, 527, 538 (1975).  Instead, the "jury wheels, pools of names, panels, or venires from which juries are drawn must not systematically exclude distinctive groups in the community and thereby fail to be reasonably representative thereof."  *Id.* at 538.

[¶28]  Relying on the Supreme Court case *Duren v. Missouri*, 439 U.S. 357, 364 (1979), we have stated:

> To establish a prima facie claim that a jury selection process
> violates the constitutional requirement that the jury be selected

> from a pool representative of the community at large, the
> challenging party has the burden to show that: (1) the group
> alleged to be excluded is a "distinctive" group in the community;
> (2) the representation of this group in jury pools from which juries
> are selected is not fair and reasonable in relation to the number of
> such persons in the community; and (3) this underrepresentation
> is due to systematic exclusion of the group in the jury selection
> process.

*State v. Holland*, 2009 ME 72, ¶ 23, 976 A.2d 227. "Certain groups—such as those defined by race or sex—are unquestionably 'distinctive.'" *State v. Anaya*, 456 A.2d 1255, 1260 (Me. 1983) (footnotes omitted).

[¶29]   Here, Thomas, has met the first element of the *Duren* test by alleging that a 'distinctive' group—African Americans—were excluded from the jury venire. *See Holland*, 2009 ME 72, ¶ 24, 976 A.2d 227. However, Thomas failed to carry his burden as to the other two elements of the test. The State, not Thomas, provided limited evidence of the proportion of the community's population that was African American. Furthermore, Thomas provided no evidence of a systematic exclusion in the jury selection process. Thomas was given the option to continue the trial so he could better develop the record for this challenge, but he chose to proceed with the trial. Because Thomas failed to establish the second and third elements of the *Duren* test, the court did not err in denying Thomas's motion.

### E.    Sufficiency of the Evidence

[¶30]   We review a challenge to the sufficiency of the evidence by reviewing the evidence adduced at trial "in the light most favorable to the State to determine whether the trier of fact rationally could have found beyond a reasonable doubt every element of the offense charged," *State v. Smen*, 2006 ME 40, ¶ 7, 895 A.2d 319 (quotation marks omitted).  Fact finders are "permitted to draw all reasonable inferences from the evidence," *State v. Williams*, 2012 ME 63, ¶ 49, 52 A.3d 911, and "[t]he weight to be given to the evidence and the determination of witness credibility are the exclusive province of the jury." *State v. Filler*, 2010 ME 90, ¶ 24, 3 A.3d 365 (quotation marks omitted).  "[A] jury's acquittal of a defendant on one charge does not limit the evidence that can be considered in a post-trial determination of whether the evidence is sufficient to support the jury's guilty verdict on a different charge."  *State v. Lowe*, 2015 ME 124, ¶ 29, 124 A.3d 156.

[¶31]   Thomas does not challenge any specific elements of any of the crimes the jury convicted him of, and broadly challenges all of the evidence.[5]

---

[5]  Thomas's argument reads that "[n]o rational juror could have been convinced of Appellant's guilt beyond a reasonable doubt" and that there was "insufficient evidence for a jury to conclude Appellant was guilty beyond a reasonable doubt."  Although the court did "note the jury verdict that required a finding of possession of a weapon" given that Count 7 was the court's decision, independent of the jury, we interpret Thomas's appeal as challenging only the jury verdicts on Counts 1, 2, 3, 4, and 6.

The jury heard testimony from the victim about the physical abuse that she suffered from Thomas and the incident when Thomas pointed a gun at her. This evidence was supported by the testimony of police officers, photographs of the injuries she suffered, and items found in the apartment. While Thomas did testify and claimed that he did not strike or threaten the victim, the jury apparently did not find him credible. *See Filler*, 2010 ME 90, ¶ 24, 3 A.3d 365. There was sufficient evidence for the jury to have rationally found that every element of each count Thomas was convicted of was proved beyond a reasonable doubt.

The entry is:

Judgment affirmed.

---

Verne E. Paradie, Jr., Esq. (orally), Lewiston, for appellant Clifton Thomas

Katherine E. Bozeman, Asst. Dist. Atty. (orally), and Katherine M. Hudson-MacRea, Asst. Dist. Atty., Androscoggin County District Attorney's Office, Lewiston, for appellee State of Maine

Androscoggin County Unified Criminal Docket docket number CR-2020-610
FOR CLERK REFERENCE ONLY